EL PUEBLO DE PUERTO RICO, representado por el COMISIONADO DEL INTERIOR, SERGIO CUEVAS, demandante y apelante, *v.* MANUEL RAIMUNDO GARCÍA CHAVEZ DEL VALLE y su esposa RAMONA GONZÁLEZ, demandados y apelados.

Núm. 9314.—*Sometido:* Mayo 15, 1946. *Resuelto:* Julio 24, 1946.

*Hon. Procurador General E. Campos del Toro (Luis Negrón Fernández,* como *Procurador General Interino,* en el alegato), *Elmer Toro Luchetti,* abogado del Departamento de Justicia, y *Jorge V. Toledo y Clemente Pérez Martínez,* abogados éstos del Departamento del Interior, abogados todos del apelante; *F. M. Susoni, Jr.,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El Comisionado del Interior, en representación de El Pueblo de Puerto Rico, instó en la corte inferior contra Manuel Raimundo García Chavez y su esposa Ramona González, dos procedimientos para expropiar terrenos de los demandados con el objeto de ensanchar y mejorar la carretera núm. 2 en el sitio conocido por Guajataca entre Quebradillas e Isabela. El procedimiento radicado con el núm. 5520 se presentó en septiembre de 1943 y el núm. R-981, en agosto de 1944. Este último se refiere a una parcela de terreno con un área de 0.3053 cuerdas, equivalentes a 1,200.04 metros cuadrados, y el otro a una parcela de 1.819 cuerdas.

El peticionario, partiendo de la base de que el terreno en cuestión tiene un valor de $200 por cuerda, depositó en la secretaría de la corte las cantidades de $61.06 y $363.80, respectivamente, dictándose a su instancia las órdenes invistiendo de título a El Pueblo de Puerto Rico sobre dichas parcelas: en el caso núm. 5520 con fecha 13 de septiembre de 1943, y en el núm. R-981 con fecha 15 de agosto de 1944. Los demandados, al contestar las peticiones de expropiación, no impugnaron el derecho a expropiar, pero alegaron que el valor razonable de la parcela en el caso R-981 es de $500,

y el del terreno en el caso 5520 es de $1,819. Alegaron, además, que en la de 1.819 cuerdas existe una casa de concreto que, incluyendo su solar, vale $10,000, la cual quedó inservible para ser habitada debido al polvo que desciende del viaducto, a "las miradas indiscretas" de las personas que transitan por la carretera que pueden ver todo lo que pasa dentro de la casa y también al hecho de haber quedado unos siete metros más baja que la carretera por haberse levantado ésta en el sitio donde se construyó el viaducto. Reclamaron daños por este concepto en la cantidad de $10,000. También reclamaron una partida de $500 por daños a una parcela de 2,000 metros radicada entre la nueva y la vieja carretera, más las costas.

Los dos pleitos fueron consolidados a los efectos del juicio, dictándose sentencia en ambos casos el 22 de agosto de 1945. En el 5520 la sentencia concedió a los demandados, en adición a la cantidad depositada por el peticionario, las siguientes partidas: (a) como precio razonable de la parcela de 1.819 cuerdas, $1,200; (b) por daños a la parcela de terreno entre la nueva y la vieja carretera, $200;(1) y (c) por depreciación de la casa de concreto $2,000, con intereses al 6 por ciento sobre todas dichas cantidades desde que el fallo fué registrado. Condenó además al peticionario al pago de las costas y $300 para honorarios de abogado. En el caso R-981, en pago de los 1,200.04 metros cuadrados, concedió $150 en adición a los $61.06 depositados por el peticionario, con intereses legales desde que se registró la sentencia, y las costas y $50 de honorarios de abogado. Contra estas sentencias interpuso el peticionario recursos de apelación, los cuales han sido consolidados en este Tribunal.

■■ Señala el apelante, como primer error, el haber declarado la corte, al iniciarse el juicio, que el peticionario

---

(1) Posteriormente el juez, por estipulación de las partes, eliminó esta partida de daños por tratarse del terreno expropiado en el caso R-981.

tenía el peso de la prueba, exigiéndole que presentase su evidencia antes que la de los demandados.

Es regla bien establecida en la mayoría de las jurisdicciones que cuando en un caso de expropiación la única cuestión en controversia es el montante de la cantidad que deba pagarse al dueño, éste, aunque nominalmente aparezca como el demandado, ocupa en realidad la posición de demandante, y como tal debe probar su derecho a recobrar una cantidad mayor que la consignada por el peticionario como valor de la propiedad y de los daños, si algunos hubiere. Consecuentemente es al dueño a quien incumbe presentar su prueba en primer término. La razón de la regla es que en cuanto a la cantidad que el peticionario ha consignado como valor razonable de la propiedad, no existe controversia, y la única cuestión a resolver es si la compensación debe ser mayor que la consignada. Por lo tanto, la controversia se reduce a la afirmación que hace el dueño al efecto de que la compensación debe ser mayor que la cantidad depositada y de la negativa de esta afirmación por el peticionario. 2 Lewis *Eminent Domain,* (3rd ed. 1909) sección 645; *U. S. Ex Rel. T. V. A.* v. *Powelson* 319 U. S. 266, 273 (1943); *Minneapolis—St. Paul Sanitary Dist.* v. *Fitzpatrick,* 277 N. W. 394, 124 A.L.R. 897 (Minn. 1937). Empero no se ha demostrado por el apelante ni lo revelan los autos, que este error de la corte *a quo* le haya causado perjuicio sustancial y consecuentemente no es motivo de revocación. *Bank of Edenton* v. *United States,* 152 F.2d 251 (C.C.A. 4th, 1945).

Se queja también el apelante de habérsele condenado a pagar, como precio de las dos parcelas expropiadas, las cantidades de $150 y $1,200, respectivamente, en adición a las sumas depositadas en los dos casos. Los dos testigos del peticionario, Enrique González y el ingeniero Ginés Flaqué Garcés, tasaron las dos propiedades en las mismas cantidades que el peticionario depositó a la disposición del dueño al solicitar las órdenes de entrega. Basaron su tasa-

ción en dos ventas de terreno similar colindante con el ex-
propiado y por el cual pagó El Pueblo de Puerto Rico, poco
tiempo antes de iniciarse estos procedimientos, a razón de
$80 y $200 por cuerda, respectivamente.

No es necesario resolver en este caso si evidencia de
ventas de propiedades similar a la que se trate de expropiar,
hechas al Gobierno o a una agencia con facultad de expropiar,
es competente a los efectos de dirimir una controversia sobre
el valor de la propiedad. Suponiendo sin resolverlo que tal
evidencia sea admisible, la gran disparidad entre el valor
que se dió a los terrenos, a saber:—$80. por cuerda en un
caso y $200 por cuerda en el otro—nos impide concluir que
la corte errara al dejar de dar gran peso probatorio a esta
evidencia, no habiéndose explicado la causa para tal dispa-
ridad entre las dos ventas.

Los testigos de los demandados, quienes estaban familia-
rizados con el valor de terrenos, tasaron la propiedad a ra-
zón de 25 centavos el metro cuadrado. Basaron su tasación
en que se trataba, según declararon, de una de las radas más
bonitas de Puerto Rico que por su topografía está en con-
diciones de ser urbanizada en un futuro próximo. El pro-
pio juez sentenciador se expresó en el sentido de que el si-
tio es precioso y debiera prepararse como un atractivo para
turistas. Pero el juez no creyó que el valor de la propie-
dad fuese todo lo que declararon los peritos de los deman-
dados, y como hemos visto, concedió por la parcela de 1200.04
metros cuadrados la cantidad de $150, y por la propiedad
de 1.819 cuerdas concedió $1,200 en adición a las cantidades
depositadas por el peticionario.

 Refiriéndose a lo que debe entenderse por justa com-
pensación en casos de expropiación forzosa ha dicho la Corte
Suprema de los Estados Unidos:

"Justa compensación incluye todos los elementos de valor que
son inherentes a la propiedad, pero no excede del valor razonable en
el mercado. La cantidad que debe pagarse al propietario no depende

de los usos a que él haya dedicado su terreno, sino que debe determinarse a base de una justa consideración de todos los usos de que sea susceptible la propiedad. El uso más beneficioso a que la propiedad sea adaptable y para el cual pueda ser necesaria o sea capaz de ser necesitada en un futuro próximo razonable, debe tomarse en consideración, no necesariamente como la medida de su valor, pero sí debe considerarse en toda la extensión en que la probabilidad de demanda para tales usos pueda afectar el valor en el mercado mientras la propiedad esté en manos de personas particulares." *Olson* v. *United States,* 292 U.S. 246, 255 (1934); *United States* v. *Causby et al,* resuelto por la Corte Suprema de los Estados Unidos el 27 de mayo de 1946; *U. S. Ex Rel T.V.A.* v. *Powelson,* supra.

La experiencia demuestra que los testigos más competentes frecuentemente difieren mucho en sus opiniones en cuanto al valor de la misma propiedad. Como se dijo en el caso de *Welch* v. *Tennessee Valley Authority,* 108 F.2d 95 (C.C.A. 6th, 1939), no existe una medida que pueda aplicarse rígida y uniformemente para determinar el valor de tierras y cada caso debe resolverse a la luz de sus propios hechos. Por esta razón, considerando la topografía de los terrenos y la probabilidad de urbanizarlos en un futuro próximo, no estamos convencidos de que el juez sentenciador estuviera desacertado al conceder las referidas compensaciones.

Se queja el apelante de la condena de $2,000 por depreciación de la casa residencia de los demandados. Este señalamiento de error está íntimamente relacionado con otro en que se alega que la corte inferior dictó sentencia sin antes celebrar la inspección ocular que solicitaron las partes al iniciarse el juicio y que la corte declaró se llevaría a efecto antes de que se dictara sentencia.

La evidencia de los demandados tiende a probar que la casa daba frente y se hallaba al nivel de la vieja carretera a una distancia de unos 100 metros; que al construirse el viaducto, la casa, que tiene una altura de 4 metros, quedó a 33 metros de distancia y unos 7 metros más baja que el nivel del viaducto; que quedó sin acceso directo a la nueva

carretera y que con tal motivo sufrió depreciación que los testigos calculan en el valor de la casa misma. Declararon además que la diferencia de nivel entre el viaducto y el emplazamiento de la casa la había perjudicado porque las personas que transitaban por el viaducto podían ver el interior de la casa y porque el polvo que desprendían los vehículos al pasar, la invadía constantemente y virtualmente la hacía inservible como residencia. También hubo prueba por parte del peticionario al efecto de que la construcción del viaducto había mejorado los terrenos de los demandados en un 20 por ciento.

El derecho a compensación por los daños que los demandados alegan haber sufrido en relación con la casa surge de la cláusula del art. 2 de la Ley Orgánica que prescribe:

"La propiedad particular no será tomada *ni perjudicada* para uso público, a no ser mediante el pago de una justa compensación fijada en la forma provista por ley." (Bastardillas nuestras.)

La frase "ni perjudicada" (*or damaged*) no existe en la constitución federal, bajo la cual no puede reclamarse compensación por daños a la propiedad, a menos que éstos sean de tal índole que equivalgan a una toma permanente de la propiedad. *United States* v. *Causby et al.*, supra; *Richards* v. *Washington Terminal Co.*, 233 U. S. 546, 554 (1914).

El estado de Illinois, dándose cuenta de los perjuicios que sufrían los habitantes de la ciudad de Chicago con motivo de las frecuentes expropiaciones que el progreso de la ciudad requería, al revisar su constitución en 1870, agregó a la cláusula correspondiente las palabras "*or damaged*" y de ahí en adelante otros estados enmendaron su constitución siguiendo el ejemplo de Illinois. 2 Nichols, *The Law of Eminent Domain*, (2d ed. 1917) sección 311; 1 Lewis, *Eminent Domain*, (3rd ed. 1909) sección 346.

El propósito de esta adición a la Constitución no fué otro que el de conceder al dueño de propiedad expropiada un de-

recho que bajo la anterior Constitución no tenía, o sea, el de obtener compensación por los daños que con motivo de la expropiación sufriera su propiedad. *Rigney* v. *City of Chicago,* 102 Ill. 64; *Chicago* v. *Taylor,* 125 U.S. 161; 1 Lewis, *Eminent Domain,* (3rd ed. 1909) sección 359.

Fijando la Corte Suprema de Illinois el verdadero alcance de las palabras *"or damaged"* agregadas a su constitución en 1870, ha dicho lo siguiente:

"En este respecto nuestra constitución concede reparación en todos los casos en que se cause por una mejora pública algún perjuicio directo de un derecho de que goza el dueño en relación con su propiedad, y cuyo derecho da a ésta un valor adicional, y por razón de tal perturbación el dueño sufra un daño especial con referencia a su propiedad en exceso del sufrido por el público generalmente. (Citas.) La perturbación no necesita ser una perturbación física de objeto tangible de derechos de propiedad, pero debe ser una perturbación de un derecho de que el propietario disfruta en relación con el dominio del objeto tangible. (Citas.)" *Kane* v. *City of Chicago,* 64 N.E.2d 506 (Ill. 1945).

Respecto a la interpretación que a la Constitución del Estado ha dado la Corte Suprema de Illinois, se ha dicho que esa definición de daños en el sentido constitucional, ha resistido la prueba del tiempo y más tarde o más temprano ha sido adoptada en casi todos los Estados que conceden compensación por perjuicios a la propiedad. 2 Nichols, *The Law of Eminent Domain,* (2d ed. 1917) sección 312, pág. 851.

La naturaleza de los daños reclamados por los demandados en relación con la casa hacía conveniente la inspección. A través de ella fácil le hubiera sido al juez determinar si en efecto el polvo de la carretera caía dentro de la casa en cantidad tan extraordinaria, fuera de lo corriente en casas contiguas a calles y caminos, que en verdad depreciara el valor del inmueble. Fácil le hubiera sido también determinar si, como alegaron los demandados, la casa quedó privada de acceso directo a la carretera y si la diferencia de nivel entre la casa y la carretera en verdad la había hecho

desmerecer y hasta qué punto; y considerando estos perjuicios en conjunto y en relación con el resto de la prueba, determinar el daño sufrido, que debe ser la diferencia entre el valor que la casa tenía en el mercado antes de construirse el viaducto y el que tenía después. Conviene agregar que el hecho de que las otras propiedades de los demandados hayan ganado un 20 por ciento en valor con motivo de la obra pública realizada por el peticionario, esa no es una circunstancia que deba tenerse en cuenta a los efectos de determinar el perjuicio sufrido, a menos que se demuestre que la propiedad ha obtenido un beneficio especial, distinto del beneficio general obtenido por la comunidad. Monografía en 145 A.L.R. 1, donde aparece el estado de la jurisprudencia sobre este punto.

Parece conveniente transcribir de 2 Nichols, *The Law of Eminent Domain,* (2d ed. 1917) sección 321:

"*Medidas de daños por cambio de nivel.*—La medida de daños en casos de cambio de nivel de un camino público es la misma que en los demás casos de toma o perjuicio a la propiedad para uso público, a saber, la disminución del valor en el mercado, en cuanto fué causada por la modificación de la relación de la propiedad en cuestión con el camino público. Todo lo que resulte de tal modificación que afecte el valor de la propiedad en el mercado, debe por lo tanto tomarse en consideración. La creación de ruido y polvo, la privación de luz y medios de acceso . . . y materias semejantes deben incluirse, no sumándolas partida por partida, pero en la extensión que, tomadas en conjunto, deprecien el valor de la propiedad en el mercado."

Convenimos con la corte a quo que la celebración de una inspección ocular descansa en la sana discreción de la corte sentenciadora; pero cuando el tribunal, como en este caso, conviene, al empezar el juicio, celebrar la inspección y las partes han confiado en ella como medida de ilustrar su prueba y destruir la evidencia contraria, el prescindir de la inspección en tales circunstancias constituye error perjudicial.

Por último, se queja el apelante de la imposición de costas y honorarios de abogado. El derecho a justa com-

pensación garantizado por el art. 2 de nuestra Ley Orgánica, no incluye compensación por costas, desembolsos y honorarios de abogado. Así se ha resuelto en la jurisdicción federal interpretando la Enmienda Quinta. *Dohany* v. *Rogers, 281 U. S.* 362 (1930); *U. S.* v. *251.81 Acres of Land in Meade County, Ky.*, 50 F. Supp. 81 (W. D. Ky. 1943); *In re Newark Shoe Stores, Inc. et al*, 2 F. Supp. 384 (D. Md. 1933). Y no existiendo ningún estatuto insular que autorice a los tribunales para imponer costas y honorarios de abogado a El Pueblo de Puerto Rico, erró la corte inferior al hacer ese pronunciamiento.

*.. Por las razones expuestas, procede modificar la sentencia apelada revocando el pronunciamiento de costas y honorarios de abogado, dejando sin efecto el que concedió compensación por perjuicios a la casa y se devuelve el caso a la corte inferior para que celebre la inspección ocular, dando a las partes oportunidad de asistir a la misma, levantando el acta correspondiente y dictando entonces el pronunciamiento que proceda con respecto a la depreciación, si alguna ha habido, de la casa residencia de los demandados. Así modificada se confirma la sentencia recurrida.*