EL PUEBLO DE PUERTO RICO, representado por el COMISIONADO DE INSTRUCCIÓN INTERINO, demandante y apelado, *v.* LORENZO ANADÓN Y PONTÓN, ISABEL RAMÍREZ, FEDERAL LAND BANK OF BALTIMORE y LAND BANK COMMISSIONER, demandados y apelantes los dos primeros.

Núm. 9873.—*Sometido:* Marzo 1, 1949. *Resuelto:* Abril 6, 1949.

*Fernando Zapater*, abogado de los apelantes; *Hon. Procurador General Vicente Géigel Polanco (Luis Negrón Fernández, Ex Procurador General,* en el alegato), y *F. Navarro Mendía* y *Eduardo Negrón Rodríguez, Procuradores Generales Auxiliares,* abogados del apelado.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

El Pueblo de Puerto Rico, representado por el Comisionado de Instrucción, inició procedimiento de expropiación forzosa en la Corte de Distrito de Ponce contra Lorenzo Anadón y Pontón, Isabel Ramírez, Federal Land Bank y Land Bank Commissioner con el fin de adquirir diez cuerdas de terrenos de una finca de doscientos noventa y una cuerdas propiedad de los demandados Lorenzo Anadón e Isabel Ramírez, y depositó en la corte la suma de $7,000 como su valor justo y razonable. El demandante quedó investido con título de dominio sobre la parcela expropiada y los demandados,[1] en su contestación, alegaron que el valor de dicha parcela era el de $15,000 por el terreno y $49,640 adicionales por las siembras, o sea un total de $64,640.[2] Fué el caso a juicio y la corte dictó sentencia declarando que los $7,000 depositados por el demandante es el valor justo y razonable en el mercado de la parcela expropiada.

No conformes los demandados apelaron y en este recurso señalan cinco errores cometidos, a su juicio, por la corte sen-

[1] Los codemandados Federal Land Bank of Baltimore, etc., comparecieron allanándose a la expropiación forzosa siempre y cuando que el dinero pagado se entregara en su totalidad al Federal Land Bank of Baltimore en abono de un crédito hipotecario a su favor.

[2] Durante la vista del caso los demandados enmendaron su contestación rebajando el valor de las siembras a $15,950 reclamando por tanto, un valor total de $30,950.

tenciadora, todos ellos relacionados en una u otra forma con la errónea apreciación de la prueba y terminando con la imputación de que actuó movida por pasión, prejuicio y parcialidad.

■■ Sostienen los apelantes que la corte erró al resolver que la finca principal de doscientos noventa y una cuerdas no sufrió depreciación al segregarle las diez cuerdas expropiadas y al no conceder los daños correspondientes (*severance damages*) de acuerdo con lo resuelto en el caso de *Pueblo* v. *García,* 66 D.P.R. 504.

En una cuidadosa y elaborada opinión, la corte, después de haber practicado una inspección ocular de la parcela expropiada, hizo constar en cuanto a este particular se refiere, lo siguiente:

"\*     \*     \*     \*     \*     \*     \* .

"Considerada toda la prueba en este caso, estimamos que el dueño no ha probado que la finca principal sufre daño alguno por la segregación de la parcela expropiada. Esta ha sido dedicada últimamente a cultivos distintos de los de la finca principal; está separada de dicho resto por medio de cercas y no existe conexión alguna entre los cultivos de la finca principal y de los de la parcela expropiada. La inspección ocular demostró además que no existe servicio alguno de la finca principal que dependa de la parcela expropiada. Así vemos que el camino principal de entrada y los caminos secundarios de la finca están fuera de la parcela. Es cierto que los planos, *exhibits* 2, 3 y 4 de los demandados, parecen indicar que al tomarse la parcela se deja una faja estrecha en la finca principal entre la esquina Suroeste de la parcela y la colindancia Sur, que es una quebrada de la finca principal. Este inconveniente, sin embargo, es más aparente que real ya que como hemos dicho antes, no existen caminos ni servicios de clase alguna de la finca principal que utilice la parcela expropiada, ni tampoco podría ser utilizada para caminos de entrada o salida al resto de la finca porque la línea Este de la parcela corre por encima del lomo de un monte que hace prácticamente inaccesible la parcela al resto de la finca por dicho extremo Este. Todas las comunicaciones de la parcela con el resto de la finca principal son a través de una pequeña vereda, para uso exclusivo de la parcela, que corre de Norte a Sur a través de la misma, según indica el croquis, exhibit 1 de los demandados."

Hemos examinado la prueba presentada por los apelantes y no erró, a nuestro juicio, la corte inferior al resolver que no se probaron los daños que haya podido sufrir la finca principal al segregarle la parcela expropiada. Es ésta una cuestión que no puede dejarse a inferencias o presunciones. Correspondía a los apelantes demostrar el justo valor que tenía la finca antes de segregársele las diez cuerdas y el justo valor que tiene después de la segregación. El caso de *Pueblo* v. *García*, supra, citado por los apelantes, no les favorece pues en él resolvimos, pág. 513, que la corte en dicho caso debió haber celebrado una inspección ocular para determinar ciertos perjuicios alegados por los demandados y que:

"... considerando estos perjuicios en conjunto y en relación con el resto de la prueba, determinar el daño sufrido, *que debe ser la diferencia entre el valor que la casa tenía en el mercado antes de construirse* el viaducto y el que tenía después. ..." (Bastardillas nuestras.)

Por analogía, el mismo principio es aplicable a este caso. En el caso de *Baetjer* v. *United States,* 143 F.2d 391, 396, (C.C.A. 1st, 1944), procedente de la Corte de Distrito de los Estados Unidos para Puerto Rico, se resolvió precisamente la cuestión aquí envuelta en esta forma:

"... Así es que, si hay una sola extensión de terreno dedicado al mismo uso y una expropiación de una parte del mismo, puede haber o no daños por la desmembración *(severance damages)* dependiendo de que la expropiación de dicha parte traiga como consecuencia una reducción del valor en el mercado de lo que queda. La compensación del dueño es la diferencia entre el valor razonable en el mercado de toda la propiedad como unidad antes de la expropiación y el valor razonable en el mercado de la parte que queda después."

En 2 Nichols, *The Law of Eminent Domain* (2ª. ed.) sec. 237, pág. 723, citado por el apelado, se expone la regla en cuanto a la prueba necesaria para demostrar los daños por depreciación en esta forma:

"La medida de compensación cuando parte de una finca es expropiada es la diferencia entre el justo valor en el mercado de toda la finca antes de la expropiación y el justo valor en el mercado de lo que queda. La cuestión para el tribunal que falla es meramente cuánto menos vale la finca sin la parte que se le ha quitado o a la cual se le ha impuesto una servidumbre, que lo que valía antes de desmembrarla. Como consecuencia necesaria es que para determinar el valor de la propiedad después de la expropiación, para estimar la cuantía en depreciación, el tribunal que determina los daños está obligado a tomar en consideración todo elemento que un comprador que desea pero a quien no se obliga comprar consideraría."

Y en la sec. 237, pág. 729, de la misma obra citada se dice:

"El peso de la prueba recae sobre el dueño para demostrar que la expropiación de parte de su propiedad causará daño al resto, y a menos que demuestre tal daño con prueba afirmativa, suministrando una base de la cual se pueda hacer un estimado razonable y propio de su valor, su compensación será limitada al valor de la parcela expropiada; y desde luego el demandante podrá refutar dicha prueba."

Al mismo efecto véanse 2 Lewis, *Law of Eminent Domain* (3a. ed.) sec. 686, pág. 1176; 18 Am. Jur., sec. 342, pág. 985 y casos citados en las notas.

Es cierto que los testigos de los apelantes declararon que el resto de la finca principal depreció en valor debido a la expropiación de la parcela de diez cuerdas. Empero, esas declaraciones nada probaron en cuanto a la cuantía, si alguna, de los daños que por dicho concepto se causaron. No debemos olvidar que estos daños (*severance damages*) nada tienen que ver con el justo valor, en sí, de la parcela expropiada a que como compensación tienen derecho los apelantes. Forman parte de la compensación total pero deben probarse independientemente del justo valor de la parcela expropiada.

No erró la corte inferior al no conceder una compensación mayor al no tomar en consideración daños por depreciación al resto de la finca pues no fueron probados.

■ Los demás señalamientos se refieren al alegado error cometido por la corte·al fijar $7,000 como el valor justo y razonable de la parcela de diez cuerdas expropiadas y que al así hacerlo actuó movida por pasión, prejuicio y parcialidad.

La prueba pericial fué contradictoria y es natural que así fuera pues, como dijimos en el caso de *Pueblo* v. *García,* supra, "La experiencia demuestra que los testigos más competentes frecuentemente difieren mucho en sus opiniones en cuanto al valor de la misma propiedad." Pero es que en el caso de autos, tanto las alegaciones como la prueba de los apelantes, demuestran lo exagerado de su reclamación. Primero alegaron en la contestación que las diez cuerdas valían $15,000 y las siembras $49,640 o sea un total de $64,640. Luego enmendaron su contestación rebajando el valor de las siembras a $15,950, reclamando un total de $30,950. ¿Qué demostró su prueba pericial? Según la detalla la corte en su opinión al referirse al testimonio del perito Carlos Archeval, lo siguiente:

"   *       *       *       *       *       *       *

"A requerimiento de los dueños demandados estuvo en la parcela haciendo un estudio de los suelos de los cultivos de la misma y luego preparó el croquis, exhibit número 1, de los demandados, a que nos hemos referido antes. Como es de verse de dicho croquis, el testigo divide la parcela expropiada en cuatro porciones: uno de 4.84 cuerdas de café y árboles frutales; otra de 1.52 cuerdas de cañas; otra de 1.60 cuerdas de yerba; y otra de 2.04 cuerdas de cañas. Todos los terrenos, sin embargo, según el testigo, son terrenos propios de cañas de azúcar, siendo ése el mejor uso a que pueden destinarse. Tomando eso en consideración, le da un valor, en conjunto, a todo el terreno, de $15,000 y a la arboleda y plantación un valor adicional separado de $15,950, o sea, un total de $30,950 al terreno y plantaciones existentes en la parcela.

"El testigo no explicó, ni nos explicamos nosotros, cómo llegó a dichas cifras. Encontramos, por el contrario, que el propio testigo, valorando separada e individualmente las porciones indicadas en el croquis, exhibit número 1 de los demandados, las valora así: La porción de árboles frutales y café, el terreno a $550 y la arbo-

leda y plantaciones a $250 por cuerda, o sea, a razón de $800 la cuerda con todo; las porciones de caña a $800 la cuerda, incluyendo las siembras; y la porción de hierba a razón de $350 el terreno y $100 la plantación por cuerda. Así vemos que, con arreglo a estas últimas cifras, la valoración que el testigo da a la parcela sería la siguiente: 8.40 cuerdas de árboles frutales, café, y caña, a $800 la cuerda, $6,720; y 1.60 de yerba a $450 la cuerda, $720; o sea, un total de $7,440, incluyendo el terreno y la arboleda y plantaciones. Trató el testigo de explicar en una ocasión que los valores individuales así asignados por él se refieren únicamente al terreno y no a las siembras. Si esto es así no se explica discrepancia tan grande entre dicha suma y la de $15,000 que dijo el testigo que valía el terreno sin las siembras. Tampoco explicó el testigo, ni nos explicamos nosotros, por qué valoró la arboleda y siembras en $15,950 o sea, a razón de $1,595 la cuerda en promedio, cuando, por otro lado, le dió a las plantaciones los siguientes valores: a la caña, 20 toneladas por cuerda, a $10 la tonelada, $200 la cuerda y a la yerba, $100 la cuerda. Su declaración en cuanto al valor del café y árboles frutales es vaga, confusa e imprecisa. Mientras en una parte de su declaración dice que tasó fincas de café, de terrenos iguales a los de la parcela, en Mayagüez a razón de $125 por cuerda, sostiene que las cuerdas de café de la parcela valen de $800 a $900 cada una. Igual confusión existe en cuanto a la valoración que hace el testigo de las plantaciones de chinas, toronjas y otra arboleda. Tampoco comprendemos cómo el testigo puede valorar los terrenos de caña de la parcela, que solamente producen 20 toneladas por cuerda, a un precio mayor que las cuerdas que tasó en Guánica, Guayama y Humacao que producen de 80 a 110 toneladas por cuerda. Se recordará que el testigo valoró los terrenos de caña de la CENTRAL MACHETE a $700 la cuerda y los terrenos de la Central Guánica a $800 la cuerda, incluyéndose en ambos casos en la valoración las plantaciones de cañas y retoños. No hubo demostración alguna de que la situación y otros elementos a considerar en la valoración fueran más favorables en relación con la parcela que en relación con dichas otras fincas así tasadas. No debe olvidarse que en la parcela no existen edificaciones ni estructuras de clase alguna. La inspección ocular que practicamos nos demostró que los terrenos de la parcela, como terrenos de cañas, son de inferior calidad. Las cañas existentes en la misma están dispersas, secas y raquíticas. La indicada en el croquis como porción de 2.04 cuerdas está en la parte escarpada de un monte cuya cima constituye la colindancia Este

de la parcela. Las llamadas plantaciones de café son algunos arbustos de café regados por algunas partes de la parcela en la que predominan los árboles de toronjas, algunos de ellos de una aparente antigüedad."

Por otra parte, la prueba pericial del demandante consistió en la declaración del testigo Vicente Riollano, cuyo testimonio resume la corte así:

"*     *     *     *     *     *     *

"Este testigo examinó personalmente la parcela e hizo un estudio de los terrenos de la misma tomando en consideración su situación, topografía, riego, cultivo, facilidades de la misma, vías de comunicación y productividad del terreno. Tomando dichos elementos en consideración y su experiencia en valores en el mercado de tierras similares a la misma, llegó a la conclusión de que la parcela tiene un valor total de $7,000 que es el valor que el demandante ha depositado como justa compensación a ser pagado a los dueños demandados. Para llegar a esta valoración dividió las parcelas, separando una cuerda de la misma que es la que da frente a la carretera, que estima propia para ser destinada a solares que pueden venderse a 25¢ el metro, o sea, un total de aproximadamente $1,000 por dicha cuerda. Las nueve cuerdas restantes las tasa a $400 por cuerda el terreno, sin las siembras y arboleda a las cuales le da un valor adicional de $250 por cuerda. Esta valoración de las siembras a razón de $250 por cuerda es aún más subida que la que le da el propio perito de los demandados, señor Archeval, quien calculó que cada cuerda de caña produciría 20 toneladas que a razón de $10 la tonelada importaría $200 por cuerda. El valor del terreno en cuanto a la cuerda que da frente a la carretera es también más subido que la que le da el testigo perito de los demandados, considerando los valores que dicho perito de los demandados le dió a los terrenos al hacer las valoraciones individuales de las distintas porciones en que distribuyó la parcela, según aparece del croquis exhibit número 1 de los demandados. Se recordará que el testigo Archeval valoró terrenos de cañas de azúcar en Humacao, Guánica y Guayama a $700 y $800 la cuerda de los cuales estimó como valor del terreno $550 por cuerda, asignando la diferencia como valor de las siembras. Si se toma en consideración que dichos terrenos así tasados producían de 80 a 110 toneladas de caña por cuerda mientras que los de la parcela expropiada solamente producían, según el propio Archeval, 20 toneladas por cuerda, se verá que la valoración que

le da a las nueve .cuerdas restantes el testigo Riollano, aún considerando dichas nueve cuerdas como terreno propio para caña, es sumamente razonable.''

La prueba demostró además que los apelantes compraron en el año 1945 tres parcelas que forman un total de 424 cuerdas, en las cuales están enclavadas las 291 cuerdas de las cuales se segregó la parcela de 10 cuerdas, por $50,000, habiendo declarado el demandado Lorenzo Anadón que había hecho mejoras en toda la finca. También tendió a establecer la prueba de los apelantes que las diez cuerdas expropiadas están situadas en la mejor parte de la finca. Aun aceptando que lo estén, no creemos que tengan un valor de más de $3,000 la cuerda, como pretenden los apelantes, cuando por la totalidad de la finca sólo pagaron a razón de $117 la cuerda. La suma de $7,000 concedida por la corte, o sea $700 por cuerda, consideramos que es justa y razonable y está de acuerdo con la prueba que le mereció crédito, y no erró al así resolverlo. No consideramos justificada la imputación de prejuicio, pasión y parcialidad basada en frases aisladas usadas por la corte en el curso del juicio.

*Debe confirmarse la sentencia.*

El Juez Asociado Sr. Negrón Fernández no intervino.