ESTADO LIBRE ASOCIADO DE PUERTO RICO, representado por FRANCISCO LIZARDI, Secretario Interino de Obras Públicas, demandante y recurrente, *v.* CONCEPCIÓN, JORGE LUCAS y MARÍA TERESA PÉREZ VALDIVIESO, demandados y recurridos.

*Número:* 12359. *Resuelto:* 21 de noviembre de 1961.

*Francisco Espinosa, Jr., Secretario de Justicia Interino, Arturo Estrella, Secretario Auxiliar, Edgar S. Belaval, Procurador Auxiliar* y *Juan Pedrosa Jr., Procurador Auxiliar,* abogados del recurrente; *Leopoldo Tormes, Raúl Matos* y *Fernando H. Usera,* abogados de los recurridos.

Sala integrada por el Juez Presidente, señor Negrón Fernández, y los Jueces Asociados señores Blanco Lugo y Dávila.

PER CURIAM: El Estado Libre Asociado de Puerto Rico inició este pleito contra Concepción, Jorge Lucas y María Teresa Pérez Valdivieso y contra la Commonwealth Oil Refining Co. Trata de reivindicar una finca de 560.96 cuerdas(1) que se alega está en posesión de los demandados, como parte de una finca de 4,518 cuerdas conocida por la "Dolores"

---

(1) Esta cabida era a base de la descripción que se hizo en la Proclama del Gobernador Yager de 1918 pero el plano del 1950 arroja una cabida de 487.43.

que éstos poseen en los municipios de Peñuelas y Guayanilla. La Commonwealth Oil Refining fue incluida como demandada por haber adquirido mediante un contrato de compraventa parte de la finca que se trata de reivindicar.

La finca objeto del pleito aparece inscrita en posesión a favor del Estado en el Registro de la Propiedad de Ponce, al folio 39 del tomo 23 de Guayanilla, finca número 1015, con la siguiente descripción:

"Rústica: Parcela de manglar y terreno salitroso denominada Manglar del Puerto y Ensenada, radicada en el barrio Playa del término municipal de Guayanilla; consta de doscientas veinte hectáreas, cuarenta y siete áreas y ochenta y seis centiáreas, equivalentes a quinientas sesenta cuerdas y noventa y seis centésimas de otra y colinda por el Norte, con terrenos de Don Lucas P. Valdivieso; por el Este, con los mismos terrenos de Don Lucas P. Valdivieso, con el caño de los Negros y con el Mar, y por el Sur y Oeste, con el Mar."

El demandante alega que su título inscrito ha estado unido a actos continuos de posesión y dominio realizados desde tiempo inmemorial por él y su antecesora en título, la Corona de España, pero que hace algunos años los demandados Pérez Valdivieso empezaron a reclamar como suya dicha finca y a interrumpir al demandante en su posesión, alegando que la referida finca forma parte de la "Dolores", que según el propio demandante "colinda por sus lados sur y oeste con el mar y el Puerto de Guayanilla, y que se halla inscrita al folio 143 del tomo 55 de Peñuelas, finca número 2109". Alega el demandante que no obstante el hecho de que la "Dolores" colinda por sus lados sur y oeste con el mar y con el puerto de Guayanilla, dicha finca no incluye los terrenos que por esta acción se intentan reivindicar. Sigue alegando el demandante que esos terrenos "consisten de manglares y salitrales que forman parte integrante de la zona marítima, y que antes de ser rellenados en parte eran cubiertos en su totalidad por las aguas del mar durante las mareas altas,

llegando éstas, en tales ocasiones, hasta las mismas colindancias sur y oeste de la mencionada finca "Dolores".

Solicita el demandante que se dicte sentencia conteniendo los siguientes pronunciamientos:

"1.—Declarando que el Estado Libre Asociado de Puerto Rico es el dueño absoluto en pleno dominio de la finca que se describe en el párrafo primero de esta demanda.

"2.—Anulando cualquier inscripción que aparezca en el Registro de la Propiedad a favor de los demandados sobre la mencionada finca o parte de ella.

"3.—Poniendo al demandante en posesión exclusiva de la totalidad de dicha finca.

"4.—Ordenando que se corrija en el Registro de la Propiedad la descripción de la finca denominada "Dolores", haciendo constar que el límite de dicha finca por las colindancias Oeste y Sur es la línea a donde llegan las aguas del mar durante las mareas más altas.

"5.—Concediendo al demandante cualquier otro remedio a que tenga derecho de acuerdo con la ley y los hechos anteriormente expuestos."

Celebrado el juicio ante el tribunal de instancia, y llevada a efecto una inspección ocular, la demanda fue declarada sin lugar y se le impusieron $5,000 de honorarios de abogado al Estado.

Al declarar sin lugar la demanda el tribunal de instancia hizo las siguientes determinaciones de hechos:

"3. Que cuando ocurrió el cambio de soberanía en esta isla, allá por el año de 1898 y cuando se firmó el Tratado París [*sic*] en 11 de abril de 1899 así como cuando comenzó a regir el Código Civil el primero de julio de 1902, y hasta ocurrir su fallecimiento en el año 1917, doña Dolores Rodríguez Hurtado, antecesora en título de don Lucas P. Valdivieso causante de los demandados de apellidos Pérez Valdivieso y Alvarado, poseía como dueña los terrenos que formaban la finca Dolores, radicada en los barrios Tallaboa Poniente y Tallaboa Saliente del término municipal de Peñuelas (Exh. 6, demandados), con su colindancia Sur desde el punto que divide la guardarraya de doña Micaela Torruella por toda la orilla del mar en dirección Oeste a llegar al lugar

de la Puntilla frente al puerto de Guayanilla, y por el Oeste la
guardarraya de Guillermo Tirado siguiendo la de don Pedro
Villoch, dueño que fue de la Hacienda Buena Vista (Exh. 9,
demandados) hasta llegar al lugar de la Puntilla mencionado,
con título de dominio debidamente inscrito en el Registro de la
Propiedad de Ponce.

"5. Que ninguna parte de los terrenos que forman la finca
Dolores propiedad de los demandados, incluye actualmente, ni
en ninguna ocasión anterior ha incluido, terreno alguno que
forme parte o hubiere procedido de la finca propiedad del de-
mandante denominado Manglar del Puerto y Ensenada radicados
esos terrenos en el barrio Playa del Municipio de Guayanilla,
(Exh. A del demandante), conforme la alegación primera de la
demanda habiendo una distancia de más o menos dos kilómetros
entre el sitio de la Puntilla del Barrio Tallaboa Poniente de
Peñuelas, al sitio de la Playa y puerto de Guayanilla, conforme
pudo apreciarlo el tribunal en su inspección ocular practicada
sobre el terreno.

"6. Que los terrenos situados en la parte Sur de la finca
Dolores y que colindan con el Mar de las Antillas, según apre-
ciación del Tribunal, y por los testimonios de los testigos José
Rosario Gelpí, Rafael Rivera Esbri, y Guillermo Vivas Valdi-
vieso, y por lo que pudo observar el Tribunal en su inspección
ocular, no estaban inundados por las aguas del mar, ni tampoco
los baña el mar en su flujo y reflujo en los sitios donde son
sensibles las mareas y las mayores olas en los temporales en
donde lo sean.   En esos terrenos crecen yerbas para alimentar
el ganado, árboles de uvas y de otras clases.   También habían
árboles dispersos de mangles tanto en la colindancia Sur como
en la colindancia Oeste, pero no son terrenos realengos o baldías
[sic] ni se pueden considerar como montes ni manglares perte-
necientes al Estado.

"8. Que cuando se firmó el Tratado París [sic] en 11 de
abril de 1899, que puso fin a la guerra entre España y Estados
Unidos, la Corona de España no estaba en posesión ni era dueña
de ninguno de los terrenos que formaban la finca Dolores en
dicha época y por el contrario, los dueños y poseedores de dichos
terrenos eran entonces y lo habían sido muchos años con ante-
rioridad a julio de 1880, la Sociedad Valdivieso Hermanos y
doña Dolores Rodríguez Hurtado, con títulos inscritos en el Re-
gistro de la Propiedad, y por ello, la Corona de España no podía

.

ceder ni traspasar ninguna parte de dichos terrenos, a los Estados Unidos de Norte América, excepto lo que pudiera entenderse por la zona marítima en los extremos en que dicha finca Dolores colindara con el mar, y según la ley la define, y el Gobierno de los Estados Unidos de Norte América, tampoco podía ceder ninguna parte de dichos terrenos, a El Pueblo de Puerto Rico.

"12. Que no se ha probado que los actos de dominio que alega el demandante haber ejercitado sobre alegados terrenos, lo hayan sido sobre los terrenos que formaban la Hacienda Dolores con anterioridad al cambio de soberanía en esta isla, o sobre los que la forman actualmente, ya que ninguno de los testigos del demandante identificó como corresponde los terrenos a que se quisieron referir, y aparece de la prueba que existen otros sitios denominados Puntilla colindando con la bahía o puerto de Guayanilla, en el cual radica la finca que interesa reivindicar el Pueblo de Puerto Rico, a distinción de los terrenos que forman la finca Dolores, propiedad de los demandados, que siempre han radicado en el Municipio de Peñuelas.

"13. Que el demandante no ha probado que los demandados o cualquiera de los mismos, ni sus antecesores en título, hayan detentado en ocasión alguna con anterioridad al cambio de soberanía en esta Isla, ni posteriormente, terreno alguno que hubiera pertenecido a la Corona de España al tiempo de firmarse el Tratado de París (Abril 11 de 1899), ni que pertenezcan actualmente al demandante.

"15. Que la codemandada Commonwealth Refining Co. Inc., resulta tercero hipotecario, por haber adquirido los predios que posee, de aquéllos a cuyo favor aparecían inscritos esos terrenos en el Registro de la Propiedad del partido, y aparecer sus títulos sobre los terrenos que posee, y que formaron parte de la finca Dolores, debidamente inscritos en el Registro de la Propiedad de Ponce."

¿Están estas determinaciones de hecho sostenidas por la prueba que tuvo ante su consideración el tribunal de instancia? Procede analizar la prueba:

La prueba del Estado consistió en:

(1) Prueba documental. De ésta la más importante:

(*a*) Certificación del Registrador de la Propiedad de Ponce acreditativa de que en enero de 1920 se inscribió a favor del Estado la posesión de la finca que se interesa reivindicar.

(*b*) Una proclama del Gobernador Yager del 28 de mayo de 1918 mediante la cual establecía como propiedad del Gobierno todos los manglares a lo largo de las costas de Puerto Rico, describiendo el mangle del puerto de Guayanilla con un área de 560.96 cuerdas como:

"Mangroves at the harbor and bay. Boundaries: N., property of Lucas P. Valdivieso; E., the same property of Lucas P. Valdivieso; Caño de los Negros and the sea; S. and W., the sea."

(*c*) Plano levantado en el 1950 siguiendo las líneas generales de otro preparado en el 1918, ambos por el Departamento de Obras Públicas en las que aparece el terreno en controversia con un área de 487.43 cuerdas, consistente en su mayor parte de manglares y salitrales.

(2) Prueba testifical. A continuación analizaremos esta última:

José Manuel Gómez—Es un ingeniero con una especialidad en mensuras y topografía, autor del plano levantado por Obras Públicas en 1950. Declara que se le encomendó el deslinde de una propiedad del Estado situada al sur de la finca Dolores, propiedad de la Sucn. Valdivieso, en los barrios Encarnación de Peñuelas y Playa, antiguamente, de *Guayanilla*. Cuando el juez le pregunta "¿Barrio Encarnación?" declara: "Si, señor, antiguamente, y Playa, hoy día se llaman esos barrios Tallaboa Poniente y Saliente." Identifica el plano preparado por él como indicativo de los terrenos del Gobierno localizados en el Puerto y Ensenada de la Puntilla de *Guayanilla*. Manifiesta que cuando recorrió los terrenos con Bengoa (representante de Valdivieso) no tenía una idea exacta de dónde estaban los terrenos ni dónde seguían las colindancias. Identifica los terrenos como que son en su mayor parte manglares, marismas, aterramientos, terrenos geológicamente

en función; que había una laguna interior y en ese sitio se ha estado secando; ahí quedan salitrales; hay partes un poco altas, bajas, hay manglares completos donde entra y sale el flujo de la marea. A la pregunta hecha de cuál es la medida del flujo y reflujo de la marea entre alta y baja contesta que precisamente ese deslinde se llevó a cabo por un estudio hecho por el U. S. Coast, U. S. Survey, en el Puerto de *Guayanilla*, el promedio es de 1' con 4", esa es la línea que representa ese plano como límite de esos manglares. Señala que los terrenos en controversia son una tercera parte nada más de terrenos, lo demás es manglar que son parte del Puerto, uno va y el agua entra, uno ve el agua. Respondiendo a la pregunta de si había observado personalmente hasta dónde llegaba la marea en su punto más alto en esos terrenos declaró el señor Gómez que esa fue la línea que se marcó sobre el terreno para determinar el límite de esos manglares. Dice que cuando se marcó a lo largo de toda la colindancia fue a base de que cuando suben las mareas en su punto alto uno ve que el agua entra, entonces, pues se marcaba y esos eran los puntos que se iban tomando. Y que precisamente el límite de los manglares y de la zona marítima terrestre es esa línea de promedio de la marea alta. Identifica los planos de 1918 y 1950 como que coinciden en sus líneas generales pero señala que hay una pequeña diferencia en área, uno es 487 y el otro es 537 cuerdas. Continúa declarando el señor Gómez que hay alrededor de 300 cuerdas hacia adentro de manglar.

Oscar Rivera Torres—Fue por espacio de 24 años empleado del Servicio Forestal. Su trabajo era patrullar los bosques y mangles en Guayanilla y Peñuelas. Patrullaba en *Guayanilla* el sitio conocido por la *Puntilla*.

José A. Gilormini—Es un ingeniero especializado en la agronomía y selvicultura (estudio de los bosques) y está a cargo de la cuestión de bosques y mangles. Ha trabajado ahí desde el 1931. La Puntilla está localizada al lado de la Playa de *Guayanilla*. Los terrenos en la Puntilla son te-

rrenos salitrosos los cuales lo consideran ellos como manglar. No conoce las colindancias de la finca "Dolores".

Ludovico Mattei—Ha tenido que ver con la Puntilla de *Guayanilla*. Hace muchos años que tuvo en arrendamiento del Gobierno los manglares allí para hacer carbón. Mientras estuvo cortando leña a base del contrato nadie intervino con él. Hoy es capitán de puerto, está encargado de los terrenos públicos que hay en la playa de *Guayanilla*. Tiene 67 cuerdas bajo su cuidado.

Germán Ortiz Rodríguez—Es guardabosque del Servicio Forestal desde 1942 y tiene que ver con los mangles de la Puntilla de *Guayanilla*. Nunca ha tenido motivo para denunciar a nadie en la Puntilla. Nunca ha visto ganado en esos terrenos.

La prueba de los demandados consistió en:

(1) Prueba documental.

(*a*) Copia certificada de las constancias registrales de una finca número 24 que se describe como una finca de 3,550 cuerdas, formada por reunión de otras adquiridas entre las fechas 1862 a 1879. Esta agrupación fue inscrita en 1880 y pasó a su vez a formar parte de la finca número 534 con otras fincas adquiridas en el período de 1885 a 1891 con una cabida entonces de 4,518 cuerdas que fue inscrita en 1898. La finca número 534 pasó a su vez a formar parte de otra de 5,811 cuerdas. Constan en récord certificaciones registrales de estas operaciones y además de varias de las fincas que formaban parte de esas agrupaciones.

(*b*) Escritura de protocolización y auto de aprobación sobre partición de herencia otorgada por los Valdivieso en 1897 en la cual se incluyó como parte del caudal hereditario la finca Dolores con una cabida de 4,518 cuerdas.

(2) Prueba testifical. A continuación la analizamos:

Natalio Torres—Tiene 80 años. Siempre ha vivido en Tallaboa Saliente y Poniente del Barrio Encarnación. Desde

niño iba a la Hacienda y sabía era de los Valdivieso y Dolores Rodríguez. Tenían allí ganado mular y caballar. Trabajó en la finca "Dolores" como mayordomo desde 1906 hasta 1939. Había sólo algunos palos de mangle en las orillas del mar. Aquellos no eran terrenos cenagosos, eran buenos para andar y caminar. Nunca vio en esos terrenos a algún empleado o funcionario del Gobierno de España. La *Puntilla pertenece a Peñuelas y no a Guayanilla*. Los guardias patrullaban la costa.

Florentino Rodríguez—Tiene 68 años. Tallaboa Poniente se extiende hasta la "Dolores". Llega hasta la Puntilla. Trabajaba cuando niño en la "Dolores" y siempre conoció como dueños a los Valdivieso y Doña Dolores. Los terrenos de la Puntilla eran talados para pastos, había sembradas unas cuantas cuerdas de caña; había ganado. Aquello es terreno seco, no es cenagoso y sólo en la orilla hay mangles. Había uno del Gobierno que volteaba la orilla del mar y que no permitía que cortaran el mangle allí. No andaban los guardabosques que eran del Gobierno dentro de la Hacienda, sólo por la orilla. Nunca denunciaron a alguno de los que estuvieron en la Puntilla trabajando y cuidando ganado.

Nemesio Arroyo Díaz—Tiene 80 años. Cuando llegaron los americanos los que mandaban en la "Dolores" eran los Valdivieso. La finca colinda por el sur con la orilla del mar. Lo sabe porque el tío era celador de pastos y él iba por la orilla volteando. Los terrenos se dedicaban a pasto de bueyes y crianzas de burros y mulas. Absolutamente ninguna otra persona distinta a los Valdivieso han hecho actos de dueños sobre esos terrenos. La colindancia de Guayanilla y Peñuelas queda bastante lejos de la Puntilla. La "Dolores" colinda con la orilla del mar. Hay palitos regados de mangle por la orilla pero regados, no eran montes, el terreno no es cenagoso.

Rafael Rivera Esbri—Tiene 75 años. La "Dolores" queda en *Peñuelas*. Desde niño iba a cazar a la "Dolores".

Para entrar era preciso pedirle permiso a los Valdivieso. La Puntilla queda en *Peñuelas*. Colinda por el sur con el mar. En la Puntilla los terrenos siempre se han dedicado a la crianza de mulos, burros, siembra de cocos, etc. En la orilla hay mangle. Cuando ocurrió San Ciriaco y luego cuando llegaron los americanos ya los Valdivieso estaban en posesión de esos terrenos. A 20 metros fuera del mar ya no nace mangle. El Peñón que es la colindancia, que es la jurisdicción entre Ponce y Peñuelas y hasta ahí llega la finca de Valdivieso. Ahí muchas veces se daban caballos a correr en el Hipódromo, pedíamos permiso para ejercitar nuestros caballos, es un *arenal seco* en época de sequía, perfectamente corren los caballos.

Guillermo Vivas Valdivieso—Tiene 74 años. "Dolores" está en *Peñuelas*. Desde que tenía 9 años iba a correr caballo allí en pastos naturales. El mar de las Antillas queda al sur de la Hacienda Dolores. En la Puntilla esos son pastos naturales, allí se criaba ganado, mulas, etc. "Ni en aquella época, ni siendo yo administrador . . . nunca, todo el que tenía que entrar a allí todos entraban con permiso . . ." Los Valdivieso mantenían la posesión de todo eso como propiedad de ellos. Le llaman la Puntilla a la parte de la María (una de las fincas que compone la Hacienda Dolores). A la orilla del mar hay mangles. En la parte de la Puntilla donde corríamos a caballo no hay mangle. En la Puntilla nunca se ha rellenado.

José Rosario Gelpí—Nació en Peñuelas en 1877. Desde niño venía a cazar a Tallaboa a la Hacienda Dolores que está en *Peñuelas* y había que pedirle permiso a los Valdivieso. Antes de llegar los americanos ya los Valdivieso estaban allí como dueños. La finca colindaba por el sur con el mar. Se criaban cabros y chivos y había ganado allí, se usaba para traquear potros y caballos. En el 1898 allí estaba la Puntilla que era parte del terreno de la Hacienda Dolores. *Que la Puntilla no pertenece a Guayanilla.* Todo eso eran terrenos

llanos. Que las mareas allí son bajas. La Puntilla colindaba al sur con el mar. La Puntilla queda en *Peñuelas*. La época en que había ganado en ese sitio era la anterior y posterior a la entrada de los americanos. Que ni el Gobierno de España ni Estados Unidos ni nuestro actual Gobierno nunca ha hecho demostración de propiedad.

Y declaró el señor Rosario Gelpí a preguntas del abogado del demandante.

"DEMANDANTE: Y la Puntilla ¿usted sabe lo que es la Puntilla?

"TESTIGO: ¿Cómo estaban las Dos Puntillas que había allí?

"DEMANDANTE: ¿O sea, había dos puntillas allí?

"TESTIGO: *Sí.*

"DEMANDANTE: ¿Cuáles son?

"TESTIGO: Una que está en la Hacienda Dolores y la otra que está donde está la Texaco y con punta que entra al mar donde está el muelle de la Texas.

"DEMANDANTE: ¿Y esas dos Puntillas en qué fincas están localizadas, en qué fincas originalmente?

"TESTIGO: *Una estaba en terreno de Guayanilla* en la Bahía de Guayanilla la que está a la derecha *y la que está a la izquierda que penetraba más al mar y que era más llana estaba en la Hacienda Dolores.*

"DEMANDANTE: Entonces hay una Puntilla que da hacia Guayanilla.

"TESTIGO: Sí, ahí se ve.

"DEMANDANTE: ¿Queda en Guayanilla?

"TESTIGO: Queda en la jurisdicción de Guayanilla.

"DEMANDANTE: *¿Y esa Puntilla de la jurisdicción de Guayanilla es parte de la Dolores?*

"TESTIGO: *No, no es parte de la Dolores, lo que es parte de la Dolores es la Puntilla más profunda donde está hoy la tubería y donde está el muelle de la Commonwealth.*

"DEMANDANTE: ¿Y ahí era que usted iba a cazar?

"TESTIGO: Iba a cazar en las dos partes porque lo mismo nos metíamos en una parte que en otra pero *no se necesitaba permiso para la parte que había mangle* pero en aquella época casi toda la Bahía de Guayanilla era de muchos mangles mientras tanto en la parte que daba a Peñuelas el mar es más tran-

quilo y eran terrenos más llanos.   Aquí ustedes tiene que llegar al Peñoncillo y a la izquierda yendo para Mayagüez ve usted a la Puntilla esa que penetra.   Puntilla es una punta de tierra que se introduce en el mar.

"DEMANDANTE: ¿Pero que es conocida generalmente por La Puntilla?

"TESTIGO: También le decían La Puntilla, lo que pasa es que *la derecha estaba en la jurisdicción de Guayanilla y la otra estaba en la Hacienda Dolores.*

"DEMANDANTE: ¿Dice usted que la de la derecha estaba en Guayanilla?

"TESTIGO: Sí, mirando por consiguiente hacia el mar, o sea, la que está más al oeste es donde está la Texas Company; han hecho allí un ferrocarril y han hecho un camino para ir a allá y están los muelles en esa punta, ésa también es una puntilla.

"DEMANDANTE: *¿Esa es la Puntilla de Guayanilla?*

"TESTIGO: La *Puntilla de Guayanilla.*

"DEMANDANTE: ¿Dónde está la Texas?

"TESTIGO: Si señor.

"DEMANDANTE: ¿Ahí es donde usted iba a cazar?

"TESTIGO: Y a la otra.

"DEMANDANTE: ¿Ahí usted iba a cazar y no le pedía permiso a nadie?

"TESTIGO: A nadie.

"DEMANDANTE: ¿No era de nadie?

"TESTIGO: *Yo digo que era de Guayanilla, pero allí no había gobierno ninguno.   Acá la otra sí estaba gobernada por Valdivieso Hermanos y sus empleados.*

"DEMANDANTE: ¿Y dice usted que en la Puntilla esa que usted dice, donde está la Texas, ahí había mucho mangle?

"TESTIGO: Si señor allí había mucho mangle.

"DEMANDANTE: ¿Pero ahí no hay mangle?

"TESTIGO: No, mangle siempre se encuentra en las orillas del mar por ahí."   [Bastardillas nuestras.]

Continúa diciendo que no se encuentra mangle en la Puntilla de Tallaboa, en la Puntilla de los Valdivieso.   Los terrenos en donde está hoy la Commonwealth eran llanos y han sido rellenados para *nivelarlos.*   No eran cenagosos, eran firmes, lo que tiene es que nunca hay firmeza para hacer grandes edificaciones.

Jacinto Roque Rivera Brun—Nació en Tallaboa Poniente en 1878. La finca "Dolores" está en Tallaboa y al Barrio Tallaboa le dicen Encarnación. Que había un mayordomo que volteaba la finca. Que había mulas en la finca y que los cultivos que había en la Puntilla llegaban hasta el mar. Cuando llegaron los americanos Dolores Rodríguez era dueña de la finca "Dolores". Que en 1887 (el Componte) los terrenos de la "Dolores" eran de los Valdivieso. Que había mangles en la *orilla* del mar pero en la finca no. La marea no sube mucho y el terreno es llano. Que cuando sube la marea no coge terreno adentro nada más que los bordes del mar y que nunca se mete dentro de la finca. Que los terrenos siempre están secos y no son cenagosos. Que con relación al húcar (guardarraya que divide a los municipios de Peñuelas y Guayanilla) la "Dolores" está para acá (este) y Guayanilla para allá (oeste).

Vemos, pues, que la prueba fue sumamente contradictoria. Mientras el demandante intenta probar que los terrenos objeto de la acción reivindicatoria consistían en su mayor parte de manglares y salitrales, los testigos de los demandados declaran que los terrenos que comprenden la "Dolores" en el sector Sur son y han sido siempre todo lo contrario y que son terrenos dedicados a la crianza de ganado y a la siembra y son de gran consistencia y que hay solo algunos manglares en esa área y éstos en las orillas del mar. El propio magistrado, según surge de las determinaciones de hecho, al hacer una inspección ocular encontró que los terrenos eran firmes en su mayor parte. Los testigos de la parte demandada describen los terrenos de los Valdivieso como terrenos que han sido explotados en todas las fases de las tareas agrícolas y por otra parte el Estado trata de establecer que eran terrenos baldíos y que las únicas personas que entraban en ellos eran sus guardabosques y las personas que contaban con su permiso expreso. Tal inconsistencia tal vez pueda ser explicada a base de la declaración del testigo Gelpí quien

declara que hay *dos* Puntillas, una localizada en *Peñuelas* de la cual forma parte la "Dolores" y otra en *Guayanilla* que pertenece al Estado. Al efecto, los propios testigos del demandante declaran que la finca objeto de su testimonio está localizada en *Guayanilla*, y los testigos de la parte demandada insisten que la "Dolores" está localizada en *Peñuelas*.

A pesar de que el Estado en su demanda original admitió que la "Dolores" colinda por el sur con el mar, más tarde insistió en que tal colindancia no era la correcta ya que, al agrupar las seis porciones que formaron la finca original "Dolores" de 3,550 cuerdas, cuatro de esas porciones no tenían colindancias por el Sur con el mar y que al refundir sus fincas los Valdivieso alteraron las colindancias. La prueba no sostiene eso ya que las dos fincas restantes que se refundieron para formar una de mayor cabida tenían colindancias Sur con el mar y consistían éstas en poco menos de 3,000 cuerdas de terreno. Así, es completamente plausible la explicación de los Valdivieso de que toda la colindancia Sur de la finca refundida es el Mar de las Antillas. Ya hemos visto que varios de los testigos de los demandados identificaron la colindancia Sur de la Hacienda Dolores como el mar y el juez de instancia le dio entero crédito a su testimonio.

Hemos examinado detenidamente las escrituras que revelan el historial adquisitivo de los demandados con referencia a la finca "Dolores", adquisiciones hechas en su mayor parte en el siglo pasado, y no encontramos discrepancia alguna que justifique una determinación al efecto de que las colindancias fueron alteradas. Evidentemente el juez de instancia no le dio crédito al único testimonio presentado por el Estado que de haber sido creído hubiera establecido el derecho a los terrenos en controversia. Nos referimos al testimonio del ingeniero Gómez, quien levantó el plano de 1950. Este testigo declaró que para levantar el referido plano siguió las líneas que representaban las mareas más altas y que esa línea fue la que se marcó sobre el terreno para determinar el límite

de los manglares. Pero la prueba presentada por los demandados, testimonios de innumerables testigos que conocían todo el sector desde el pasado siglo, controvierte esa declaración. Hemos visto que declaran que el terreno es firme, que no hay manglares y según el juez que dictó la sentencia la inspección ocular revela que lo último expuesto es la realidad.

■ Una lectura del expediente nos demuestra que mientras los testigos de los demandantes no sabían hablar de las colindancias de la finca en controversia los demandados por su parte establecieron cumplidamente las colindancias de su finca. Y han sido innumerables los pronunciamientos de este Tribunal al efecto de que es el demandante como parte de su "onus probandi" el que tiene que establecer cumplidamente la identidad de la finca que interesa reivindicar. *Velázquez* v. *Velázquez*, 82 D.P.R. 631 (1961); *Arce* v. *Díaz*, 77 D.P.R. 624 (1954); *Sucn. Meléndez* v. *Almodóvar*, 70 D.P.R. 527 (1949); *Sevilla* v. *Compañía Azucarera del Toa*, 69 D.P.R. 249 (1948); *Torres* v. *Capital de Puerto Rico*, 54 D.P.R. 357 (1939); *Pérez Chanza* v. *Gerena*, 41 D.P.R. 105 (1930); *Del Rosario* v. *Pizá*, 32 D.P.R. 313 (1923); *Matienzo* v. *Cancio*, 23 D.P.R. 269 (1915); *Siragusa* v. *Pueblo*, 18 D.P.R. 595 (1912); *Martínez* v. *Delgado*, 18 D.P.R. 390 (1911); *Morales* v. *Landrau*, 15 D.P.R. 782 (1909); *Mouriño* v. *Carreras*, 2 D.P.R. 588 (1902).

Así la corte a quo no erró al declarar sin lugar la demanda interpuesta en el presente caso.

■ Ahora, en lo que sí erró fue en condenar en honorarios de abogado al Estado. Repetidamente hemos sostenido que es improcedente condenar al Estado a pagar honorarios de abogado. *Sucn. Arroyo* v. *Municipio*, 81 D.P.R. 434 (1959); *Martínez & Márquez* v. *Sancho, Tesorero*, 76 D.P.R. 914 (1954); *Pueblo* v. *García*, 66 D.P.R. 504 (1946). La condena de honorarios para que proceda debe estar autorizada por ley y no hay estatuto en esta jurisdicción que autorice la imposición de honorarios en contra del Estado. *Sucn.*

*Arroyo* v. *Municipio*, supra. No encontramos justificación alguna para la tesis del tribunal de instancia al efecto de que la regla antes referida se aplica cuando el Estado es el demandado pero no cuando éste es el que inicia el pleito. *Ocasio* v. *Pueblo*, 79 D.P.R. 28 (1956) no es autoridad en contra de lo antes expuesto. La cuestión no fue allí objeto de consideración al fallar el caso y fue de paso que afirmamos que el Pueblo respondía de las costas y los honorarios de abogado.

*Por lo antes expuesto se modifica la sentencia apelada eliminando la condena en honorarios de abogado, y así modificada, se confirma.*