Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| GRAN VISTA INC., REPRESENTADA POR LA PRESIDENTE DE LA JUNTA DE DIRECTORES Y OTROS<br><br>Apelada y Peticionaria<br><br>v.<br><br>ALINA VICENTE LÓPEZ<br><br>Apelante y Recurrida | KLAN202300881<br><br>consolidado con<br><br>KLCE202301310 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Civil núm.: GR2020CV00260 (801)<br><br>Sobre: Acción Reivindicatoria |
|---|---|---|

Panel integrado por su presidenta la jueza Ortiz Flores, la jueza Romero García y el juez Rivera Torres.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 6 de mayo de 2024.

Comparece ante este Tribunal de Apelaciones, la Sra. Alina Vicente López (señora Vicente López o la apelante), mediante el escrito de *Apelación* de epígrafe y nos solicita que revoquemos la *Sentencia Final* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI), el 30 de agosto de 2023, notificada al día siguiente. Mediante este dictamen, el foro primario concedió la acción reivindicatoria instada por Gran Vista, Inc. (GVI o la apelada). En consecuencia, restituyó a su favor la posesión del terreno en cuestión (Lote J). A su vez, determinó que GVI podía hacer suyas ciertas estructuras edificadas; así como plantas y material vegetativo sembrado en la franja de terreno. También decretó que la señora Vicente López era edificante de mala fe y le impuso el pago de las costas del pleito, incluyendo satisfacer los honorarios del Agrimensor, Ing. José G. Pagán, perito de GVI.

De otra parte, GVI recurre la *Resolución* de 11 de septiembre de 2023, notificada el día 14 del mismo mes y año, mediante la cual el TPI denegó la imposición de honorarios de abogado por temeridad

a su favor. Por igual, reclama que el TPI no sancionó ni obligó a la señora Vicente López al pago de las costas interlocutorias ascendentes a $861 impuestas por el TPI mediante la *Orden* dictada el 7 de julio de 2022, archivada en autos el día 14 del mismo mes y año.

Por los fundamentos que expondremos a continuación, procede confirmar la *Sentencia Final* apelada y a su vez, desestimar el auto de *certiorari* ante la falta de jurisdicción.

## I.

El 5 de noviembre de 2020, la Sra. Lilliam Maldonado Cordero, como presidenta de la Junta de Directores de Gran Vista, Inc., presentó una demanda sobre acción reivindicatoria contra las señoras Alina Vicente López y Susana Palacios Capuras.[1] Posteriormente, el 27 de mayo de 2021, presentó una demanda enmendada. En esta, sostuvo que la Urbanización Gran Vista está ubicada en el Barrio Navarro de Gurabo y que, conforme al plano preparado por el Ing. Jorge E. Colón, quedaron segregadas e inscritas en el Registro de la Propiedad los diversos lotes de la comunidad; así también quedaron designadas y demarcadas las áreas comunes. Adujo que, entre dichas áreas, se designó un espacio denominado "áreas verdes" y parte de estas fue reservada para el sistema de escorrentías de las aguas pluviales. Afirmó que, una de esas áreas verdes comunes, sirve para las escorrentías de aguas pluviales que ubica entre los solares números 54 y 55 de la Calle El Prado, por donde discurre un canal o caño. Expuso que dicho predio de terreno fue identificado en el Plano de Inscripción de GVI como Lote J.

Indicó, además, que la señora Vicente López reside y es titular registral del solar 54 y que la señora Palacios Capuras vive y es

---

[1] En la narración del tracto procesal utilizamos extractos detallados en el recurso núm. KLCE202100699.

dueña del solar 55. Al respecto, se especificó que esta última se incluyó por ser colindante con el lado oeste del predio en controversia. Sostuvo que la señora Vicente López ha estado sembrando periódicamente en el lugar plantas, palmas arecas y árboles e interviniendo con el área verde destinada al desagüe de las escorrentías pluviales. Alegó que, esta instaló en el área que colinda con el lado este de su propiedad, una línea de tubos galvanizados y que marcó un lindero en un terreno que no es suyo, que invadió el área común y que trató de hacer suyos terrenos que son de la comunidad.

Se apuntaló que el 1 de agosto de 2020, el Agrimensor José G. Pagán realizó una mensura del área comunal a la cual se citó a las dos colindantes, se marcaron los linderos según el plano de inscripción, y días después varios de los puntos fueron removidos. A solicitud de la apelante le fue entregada copia del informe.

En atención a lo antedicho, GVI solicitó que se ordenara a la señora Vicente López a restablecer las colindancias a su estado original, conforme con los puntos marcados en la mensura realizada, los que fueron alterados sin autorización; que elimine a su costo los tubos que instaló en la propiedad de Gran Vista, Inc.; así como toda siembra realizada en el predio y restablezca la propiedad a su estado original. Asimismo, peticionó que se le condene al pago de costas y honorarios de abogado, estimados en $5,000.

Durante el trámite del litigio, las partes presentaron múltiples mociones que el foro primario adjudicó mediante órdenes y resoluciones.[2] Entre estas, el Tribunal de Primera Instancia pautó y llevó a cabo una inspección ocular del lugar en controversia,

---

[2] Advertimos que en el recurso KLCE202100699 la señora Vicente López, allí peticionaria, acudió ante esta *Curia* para revisar varias órdenes emitidas por el foro *a quo*. Véase el Apéndice del Recurso de Apelación, a las págs. 317-318. Mediante la *Resolución* del 28 de junio de 2021, un Panel hermano de este foro intermedio desestimó el auto por falta de jurisdicción.

respecto a lo cual emitió una *Resolución y Orden* el 1 de junio de 2021. En virtud de ese dictamen, autorizó a GVI a que, a su cuenta y cargo, realizara la limpieza y el mantenimiento del cauce por donde discurren las aguas de escorrentías entre las residencias números 54 y 55, ubicadas en la Calle El Prado de la Urbanización Gran Vista de Gurabo. Así también, en el área verde entre el canal de cemento y bloques y la verja de *cyclone fence* que ubica hacia el lado de la residencia 55. En el dictamen, el tribunal primario hizo constar que lo dispuesto no tenía el efecto ni podía ser utilizado para determinar quién era el propietario del terreno objeto de controversia.

El 1 de marzo de 2022, el foro de primera instancia anotó la rebeldía a la señora Vicente López y eliminó sus alegaciones y defensas.

En el interín, y antes de ser contestada la demanda, como expondremos más adelante, se hace preciso indicar que el 10 de abril de 2022, el Municipio de Gurabo solicitó intervenir en el pleito expresando que GVI no puede adjudicarse la titularidad sobre un cauce, canal, quebrada o caño ya que, como condición impuesta por la extinta Administración de Reglamentos y Permisos (ARPe), cualesquiera de estas áreas le fue cedida al ayuntamiento mediante la Escritura Núm. 41 sobre *Segregación, y Cesión de Áreas Verdes a Favor del Municipio* otorgada el 8 de febrero de 1991. Sobre este punto, el 27 de abril de 2022, GVI había presentado un escrito al cual anejó una comunicación del Municipio en la que la Lcda. Cynthia Marie Vázquez Peña, de Asuntos Legales, aclaró que, al tenor de la Certificación del Registro de la Propiedad, Escritura Pública y Estudio de Título que recibieron, <u>la titularidad del Lote J consta inscrita a favor de GVI</u>.[3]

---

[3] *Íd.*, a las págs. 418-421.

De igual manera, el 28 de abril siguiente, el Municipio instó una nueva moción en la que informó que, una vez examinado el lugar, en ocasión de la mensura ordenada por el TPI, peticionó que se le excluyera de comparecer en el caso debido a que **"… el lugar objeto de la disputa, no pertenece al Municipio de Gurabo, … Tampoco … de ninguna forma se interviene con las escorrentías de aguas en el lugar, en lo que compete a la jurisdicción del municipio**".[4] El foro apelado concedió la solicitud.

Es importante advertir que, el 21 de junio de 2022, este Panel denegó la expedición del recurso de *certiorari* (KLCE202200654), que fuera solicitado por la aquí apelante; así como una moción de paralización. El referido recurso se instó para que revisáramos una determinación del TPI donde denegó una solicitud para suspender una vista en rebeldía.

Ahora bien, el 3 de octubre de 2022, el TPI emitió una *Resolución* expresando que se le levantaría la rebeldía impuesta, sujeto a que la apelante pagara una sanción de $700. Así, el 1 de noviembre de 2022, esta presentó una *Contestación a la Demanda Enmendada y Solicitud de Desestimación por Falta de Partes Indispensables y Otras Causales*. El escrito judicial fue aceptado por el foro *a quo*. En la contestación, la apelante negó la mayoría de las alegaciones, y planteó como defensas afirmativas las siguientes: falta de parte indispensable por no haberse incluido a su esposo y a la Sociedad Legal de Gananciales; confusión de derechos como cotitular de las áreas verdes; falta del Municipio de Gurabo como titular de las áreas verdes y servidumbres; y ausencia de legitimación activa por no poder GVI representar al Municipio de Gurabo, como dueño del Lote J. A su vez, solicitó la desestimación de la demanda en contra de la codemandada, señora Palacios

---

[4] Véase el Apéndice del Recurso de Apelación, a la pág. 422. Énfasis nuestro.

Capuras, por carecer de justificación. Esto, sin exponer argumento alguno.

La señora Palacios Capuras se opuso y entre sus argumentos están que: la señora Vicente López adquirió la propiedad 54 por donación por lo que es un bien privativo y en la escritura aparece como soltera; el Municipio de Gurabo expresó que el lugar en controversia no le pertenece; GVI es la dueña del Lote J; y no puede expresarse respecto a la desestimación en su contra, ya que no se fundamentaron las razones para dicho pedido.

Así también, la apelada respondió a lo solicitado por la señora Vicente López indicando que: el Municipio de Gurabo aceptó que el Lote J no es de su propiedad; la apelante siempre ha sostenido que es soltera y, si aún no lo fuera, su esposo no tiene interés común en el lote en controversia; el Lote J es de la corporación; aunque la apelante es cotitular de las áreas verdes, no tiene el derecho a adueñarse ni actuar como si fuesen de su exclusividad; y en el 2022 se celebró una Asamblea donde se reafirmó por el Consejo la demanda de reivindicación por los titulares.

Por su parte, el 5 de diciembre de 2022, el TPI emitió una *Resolución* denegando las mociones de sentencia sumaria presentadas por GVI y la señora Vicente López. El foro primario esbozó que, aunque existían varios hechos incontrovertidos, los mismos resultaban insuficientes para resolver el caso sumariamente.[5]

El 25 de enero de 2023, se presentó el *Informe sobre Conferencia con Antelación al Juicio* el cual contiene veinte y siete (27) hechos estipulados acorde con la mencionada *Resolución*.[6] El 31 de enero siguiente, se celebró la *Conferencia con Antelación al Juicio* a la que comparecieron las partes y sus representaciones

---

[5] *Íd.*, a las págs. 739-743.
[6] *Íd.*, a las págs. 788-790.

legales. De lo allí sucedido, surge de la *Minuta* que el foro primario hizo constar que, en cuanto a los hechos no controvertidos esbozados en la *Resolución* del 5 de diciembre de 2022, no se tenía que pasar prueba documental para probarlos. Además, se señaló el juicio en su fondo para los días 26, 27, 28, y 29 de junio de 2023.

El 31 de marzo de 2023, el foro apelado emitió una *Orden* denegando la prórroga solicitada por la nueva representación legal de la apelante para enmendar el *Informe sobre Conferencia con Antelación al Juicio.* El 17 de abril de 2023, la señora Vicente López instó un escrito en el que arguyó, entre otros asuntos, que la verja que levantó GVI destruyó la vegetación y se le privó del uso del pozo séptico al quedar enclavado sin posibilidad de ser vaciado. Ante lo alegado, el día siguiente, el TPI emitió una *Orden* para conceder un término a GVI para que expresara su postura y señaló una vista evidenciaria para el 25 de abril de 2023.

El 21 de abril, la apelada presentó un escrito en cumplimiento de orden negando la mencionada alegación respecto a que el pozo séptico quedó enclavado por el levantamiento de la verja temporera ordenada por el tribunal. Afirmó que la referida verja se instaló en los lindes marcados por el Agrimensor José G. Pagán, según fuese informado al TPI, y ello no fue controvertido por la apelante en su escrito. Asimismo, apuntaló que la propiedad de la señora Vicente López tiene acceso de la vía pública a su propiedad y la verja en <u>nada impide que se pueda acceder al pozo mediante el sistema de mangas de succión desde un camión estacionado en la calle pública frente a su residencia</u>. Indicó que el pozo se construyó hasta la colindancia y parte de dicha estructura y un muro invaden el Lote J. Respecto a esta controversia, el 25 de abril de 2023 el foro *a quo*, en función de la vista, emitió una *Resolución* decretando que GVI removerá la verja temporera para permitir pasar la manga para vaciar el pozo séptico y luego la volverá a colocar. De la *Minuta* surge **que el foro revisado**

**aclaró que la instalación de la referida verja no implica que se determinaron colindancias o segregación de terrenos ni si los puntos están correctos**.

El juicio en su fondo se celebró los días 26, 27 y 28 y de junio de 2023 según programado previamente. Aquilatada la prueba testifical y documental, el TPI dictó la *Sentencia Final* apelada.[7] En esta, el foro primario concedió la acción reivindicatoria instada por GVI. En consecuencia, restituyó a su favor la posesión del terreno en cuestión (Lote J). A su vez, determinó que GVI podía hacer suyas ciertas estructuras edificadas; así como plantas y material vegetativo sembrado en la franja de terreno. También decretó que la señora Vicente López no era edificante de buena fe por lo que la parte apelada podía hacer suyas la pared de concreto y bloques ornamentales; así como parte de un piso de cemento que sobresalen de la residencia o en su defecto, solicitarle a esta que las demuela a su riesgo y coste. Dispuso, además, que no podía determinar qué parte del pozo séptico invadía el terreno del Lote J. El TPI impuso a la apelante el pago de las costas del pleito, incluyendo satisfacer los honorarios del Agrimensor, Ing. José G. Pagán, perito de GVI.

En el dictamen el foro primario razonó que:[8]

.    .    .    .    .    .    .    .

> ... determinamos que GVI es dueño del Lote J. La co-demandada Vicente López es la dueña del Solar 54. El Lote J colinda, en su lado oeste, con el Solar 54, en una alineación, por los puntos de colindancia 33 y 34, según identificados en el plano preparado por el ingeniero Jorge Colón, aprobado por ARPe en el caso 85-47-A-320-CPD. La verja de "cyclone fence", instalada mediante orden judicial, está colocada sobre la colindancia que separa el Solar 54 del Lote J. La verja de "cyclone fence" discurre a todo lo largo del lindero que separa el Solar 54 del Lote J, y separa ambas heredades. **Se determina que Vicente López ha realizado actos de posesión, dominio y control sobre terreno que forma parte del Lote J**. En consecuencia,

---

[7] El 28 de junio de 2023 el TPI dictó una Sentencia Parcial por virtud de la cual desestimó la demanda en contra de la señora Palacios Capuras por no haberse demostrado que esta ocupaba, poseyera, usurpara o invadiera el terreno perteneciente a GVI, por lo que resultaba improcedente la acción reivindicatoria en su contra. *Íd.*, a la pág. 1055.

[8] Véase el Apéndice del Recurso de Apelación, a las págs. 6-10.

se concede la acción reivindicatoria instada por GVI. Se restituye la posesión de dicho terreno a favor de GVI para que ejercite los actos de dominio y control sobre dicha propiedad, sin más limitaciones que las que le impone la ley.

Por otro lado, luego de instalada la verja de "cyclone fence", en el Lote J hay unas bolas de concreto, focos y tubos con hilos. También hay aproximadamente 5 pies lineales de una pared de concreto y bloques ornamentales, y unos 20 a 40 pies cuadrados de un piso de cemento, que sobresalen del Solar 54 de Vicente López, y que invaden el Lote J. La pared de bloques ornamentales no estaba erigida cuando el Huracán María pasó por Puerto Rico el 19 de septiembre de 2017.

.    .    .    .    .    .    .    .

En cuanto a las bolas de concreto, focos y tubos con hilos, **GVI no demostró quién colocó los mismos**. Durante el juicio Vicente López tampoco reclamó su titularidad. En consecuencia, se autoriza a GVI a hacer suyas dichas estructuras, o remover y disponer de las mismas, según entienda. Igual situación ocurre con las plantas y material vegetativo sembrado en la franja de terreno objeto de la presente acción reivindicatoria. No se estableció con especificidad qué plantas, si alguna, fueron sembradas por Vicente López, **ni ésta reclamó titularidad sobre las mismas**. Se autoriza a GVI a hacer suyas dichas plantas y material vegetativo, o remover y disponer de las mismas, según entienda.

Veamos ahora la pared de concreto y bloques ornamentales, así como parte de un piso de cemento, que sobresalen de la residencia de Vicente López, y que invaden terreno del Lote J. ...

.    .    .    .    .    .    .    .

**Vicente López no demostró ser edificante de buena fe**. Ella no posee un título suficiente que la llevara al convencimiento de que estaba edificando sobre un predio que entendía le pertenecía. Por el contrario, Vicente López nunca ha reclamado ser la titularidad del terreno aquí en controversia. **Su alegación siempre ha sido que el terreno pertenece a un tercero, al Municipio de Gurabo**. Tampoco se demostró que en este caso hubiera mediado la autorización de GVI para llevar a cabo dichas construcciones extralimitadas, lo cual hubiese dispensado de demostrar justo título. (cita omitida) En resumen, Vicente López edificó en terreno que no le pertenecía, a sabiendas que no era de ella; por lo tanto, no cabe hablar de edificante de buena fe. **La referida co-demandada es una edificante de mala fe.**

Vicente López tampoco demostró que la parte de la construcción que realizó sobre su terreno, y la parte que edificó en terreno de GVI, formen un todo indivisible. Tampoco demostró que la edificación, unida a su terreno, tenga una importancia y valor superior al del terreno invadido. **En este caso no aplica la doctrina de la accesión invertida por construcción extralimitada**. En consecuencia, se dispone que GVI puede hacer suya la pared de concreto y bloques ornamentales, así como parte de un piso de cemento, que sobresalen de su residencia; o puede solicitar que se ordene a Alina Vicente López demoler, a su cuenta,

riesgo y cargo la pared de concreto y bloques ornamentales, así como parte de un piso de cemento, que sobresalen de su residencia, **devolviendo el terreno invadido a su estado original.** En cuanto a qué parte del tanque séptico de la residencia de Vicente López invade terreno del Lote J, la prueba presentada resultó insuficiente para realizar dicha determinación; así como para determinar la extensión de la alegada invasión. [Énfasis nuestro]

Inconforme con el dictamen, la señora Vicente López acude ante este foro apelativo mediante el recurso de epígrafe y le imputa al foro primario haber incurrido en los siguientes errores:

**PRIMER ERROR:** EL TPI COMETIÓ ERROR DE DERECHO EN LA APRECIACIÓN DE LA PRUEBA AL ENTRAR EN LAS CONTROVERSIAS PLANTEADAS POR LA PARTE DEMANDANTE, EN AUSENCIA DE LEGITIMACIÓN ACTIVA PUES LA PROCLAMADA PRESIDENTA NO CONTABA CON EL AVAL Y CONSENTIMIENTO DEL CONSEJO DE TITULARES PARA INSTAR LA DEMANDA EN EL CASO DE EPÍGRAFE.

**SEGUNDO ERROR:** EL TPI COMETIÓ ERROR DE DERECHO EN LA APRECIACIÓN DE LA PRUEBA AL NO REQUERIR DE LA PARTE DEMANDANTE QUE EN UNA ACCIÓN REINVINDICATORIA TRAJERA COMO DEMANDADOS A TODOS LOS COLINDANTES QUE REALIZAN ACTOS DE POSESIÓN SOBRE EL INMUEBLE QUE SE PRETENDE REINVINDICAR, POR LO QUE SE CREÓ UNA SITUACIÓN DE PROCESAMIENTO SELECTIVO.

**TERCER ERROR:** EL TPI COMETIÓ ERROR DE DERECHO EN LA APRECIACIÓN DE LA PRUEBA AL CONCLUIR QUE UN SOLAR CON ESCORRENTÍAS PLUVIALES ES SUSCEPTIBLE DE SER PROPIEDAD PRIVADA, LO CUAL ES UN HECHO CONTRARIO A LA LEY.

**CUARTO ERROR:** EL TPI COMETIÓ ERROR DE DERECHO AL CONCLUIR QUE LA TITULARIDAD DE LA PARTE DEMANDANTE ES LEGÍTIMA, A PESAR DE CONTAR CON UNA RESOLUCIÓN DE ARPE QUE CEDE DICHO SOLAR AL MUNICIPIO DE GURABO.

**QUINTO ERROR:** EL TPI COMETIÓ ERROR DE DERECHO EN LA APRECIACIÓN DE LA PRUEBA AL CONCLUIR QUE LA DEMANDADA-APELANTE NO DEMOSTRÓ SER POSEEDORA DE BUENA FE, A PESAR DE SER TITULAR CON DERECHO A DISFRUTAR DE LAS ÁREAS COMUNES.

**SEXTO ERROR:** EL TPI COMETIÓ ERROR DE DERECHO EN LA APRECIACIÓN DE LA PRUEBA AL GUARDAR SILENCIO SOBRE EL HECHO DE QUE SU DETERMINACIÓN DEJA ENCLAVADO EL POZO SÉPTICO DE LA PARTE APELANTE.

**SÉPTIMO ERROR:** EL TPI COMETIÓ ERROR EN LA APRECIACIÓN DE LA PRUEBA AL CONCLUIR QUE EL TRABAJO REALIZADO POR EL PERITO DE LA DEMANDANTE CONSTITUYE UN TRABAJO DE

MEDICIÓN CIENTÍFICA Y DARLE PESO A DICHA OPINIÓN.

Por otra parte, el 8 de septiembre de 2023, GVI instó un escrito intitulado *Moción de imposición del pago de honorarios de abogado a favor de la parte demandante, Gran Vista, Inc.*[9] En este, relacionó las instancias en que, a su entender, la señora Vicente López observó una conducta temeraria. GVI acompañó su petición con escritos y determinaciones judiciales dictadas durante el pleito. El 14 de septiembre de 2023, el TPI notificó su denegación al pedimento.[10] Entonces, GVI interpuso una reconsideración,[11] a la que la señora Vicente López se opuso[12] y GVI replicó.[13] En respuesta a los planteamientos, mediante una *Orden* dictada el 20 de octubre de 2023, notificada el día 25 siguiente, el TPI declaró no ha lugar la solicitud a reconsiderar.[14]

Asimismo, el 8 de septiembre de 2023, GVI presentó un oportuno *Memorando de Costas*.[15] En lo que nos compete, a pesar de incluir la partida "n" en la suma total de $7,138.17, GVI expresó:

> (n) ***Estas cantidades no contemplan los honorarios de la [c]omparecencia a la Vista en Rebeldía del 22 de junio de 2022 de José G. Pagán ($639.00), Nature Care Services ($160.00) y Diana Osuna ($62.00), las cuales no se han pagado todavía por la Codemandada Vicente López.

La aludida partida se refiere a unas costas interlocutorias concedidas por el TPI a favor de GVI, allá para el 13 de julio de 2022.[16] Al respecto, en un pronunciamiento posterior, el TPI le indicó a GVI que el reembolso de estos gastos era un asunto en ejecución.[17] Por ello, al atender las costas del pleito, si bien el foro *a*

---

[9] Véase el Apéndice del Recurso de *Certiorari*, a las págs. 10-18, con anejos a las págs. 19-102.

[10] *Íd.*, a la pág. 106.

[11] *Íd.*, a las págs. 107-111.

[12] *Íd.*, a las págs. 112-114.

[13] *Íd.*, a las págs. 123-126.

[14] *Íd.*, a la pág. 127.

[15] *Íd.*, a las págs. 103-105. Cabe señalar que la señora Vicente López se opuso tardíamente el 26 de septiembre de 2023, por lo que GVI abogó el hecho en su réplica; véase el Apéndice del recurso de *Certiorari*, a las págs. 115-119; 120-122.

[16] Refiérase al Apéndice del Recurso de *Certiorari,* a las págs. 160.

[17] *Íd.*, a la pág. 165.

*quo* concedió algunos gastos reclamados y denegó otros,[18] no se pronunció sobre la aludida partida "n".

No conforme, GVI recurre ante este foro revisor el 22 de noviembre de 2023, mediante un auto de *certiorari* y señala los siguientes errores:

> **A.** ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA SOLICITUD DE HONORARIOS PRESENTADA POR LA PARTE PETICIONARIA A[U]N EN VISTA DE UNA CLARA DEMOSTRACIÓN DE TEMERIDAD POR PARTE DE LA RECURRIDA.
>
> **B.** ERRÓ El TPI AL NO IMPONER SANCIONES Y/[U] OBLIGAR A LA RECURRIDA AL PAGO DE LAS FACTURAS PENDIENTES POR COMPARECENCIA A LA VISTA EN REBELDÍA DE PERITOS Y FUNCIONARIOS TESTIGO[S] DE LA PETICIONARIA A[U]N EN VISTA DE HABER SIDO NOTIFICADO DE QUE ESTAS NO HABÍAN SIDO PAGADAS LUEGO DE QUE A LA RECURRIDA SE LE ORDENARA EL PAGO.

Transcurrido el término de diez (10) días sin que la señora Vicente López incoara un memorando en oposición a la expedición del auto discrecional, de conformidad con la Regla 37 (A) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, consolidamos ambos recursos por virtud de la *Resolución* de 11 de diciembre de 2023 y en armonía con la Regla 80.1 de nuestro Reglamento.

De otro lado, luego de haber atendido los asuntos apelativos referentes a la transcripción de la prueba oral, el 10 de enero de 2024 emitimos una *Resolución* dando por estipulada la misma, y concedimos un término a las partes para presentar sus respectivos escritos. El 6 de febrero de 2024, la apelante presentó su alegato suplementario y el 25 de marzo siguiente, la parte apelada instó su alegato en oposición. Así, nos damos por cumplidos y decretamos perfeccionado los recursos.

---

[18] *Íd.*, a las págs. 128; 129, con anejos a las págs. 130-135; 136-145; 146; 147; 148-150; 151; 152-154.

Analizados las comparecencias, los expedientes apelativos y la transcripción de la prueba oral (TPO), así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Acción reivindicatoria**

La presente demanda fue instada vigente el Código Civil de 1930.[19] El Artículo 280 de dicho Código, 31 LPRA sec. 1111, disponía que: (1) la propiedad es el derecho por virtud del cual una cosa pertenece en particular a una persona con exclusión de cualquiera otra; (2) la propiedad concede el derecho de gozar y disponer de las cosas sin más limitaciones que las establecidas en las leyes; y, por último, (3) el propietario tiene acción contra el tenedor y el poseedor de la cosa para reivindicarla. Esto último, se refiere a la denominada acción reivindicatoria.[20] *Ramírez Quiñonez v. Soto Padilla,* 168 DPR 142 (2006), *Soc. Gananciales v. G. Padín Co., Inc.,* 117 DPR 94, 99 (1986).

La acción reivindicatoria ha sido distinguida de la acción de deslinde. Esta última es totalmente distinta a la acción reivindicatoria. La acción de deslinde se otorga a todos los propietarios cuyas propiedades limítrofes tienen confundidos sus linderos por causas naturales, accidentes fortuitos o actos voluntarios de tercero, debiendo concurrir todos a un solo juicio. No obstante, la acción reivindicatoria se da de modo subsidiario cuando los límites de diversos fundos contiguos están ya debidamente demarcados, o cuando como consecuencia de la demarcación, hay necesidad de reivindicar terrenos que se creen usurpados. La acción apropiada para dirimir la posible usurpación

---

[19] Mediante la Ley núm. 55-2020 se aprobó el nuevo Código Civil de Puerto Rico. No obstante, los hechos del caso tienen su génesis en momentos previos a la vigencia del nuevo cuerpo procesal. Por lo que, procede la aplicación de las disposiciones del derogado Código Civil de 1930.
[20] El Artículo 741 del Código Civil 2020, 31 LPRA sec. 7951, contiene igual disposición.

de terrenos previamente demarcados es la acción reivindicatoria. *Arce v. Díaz*, 77 DPR 624, 627-628 (1954).

En acciones reivindicatorias, los demandantes, para salir victoriosos deberán hacerlo basados en la fuerza probatoria de sus títulos y no en la debilidad del título de la parte demandada. *Castrillo v. Maldonado*, 95 DPR 885, 891 (1968). Para que un tribunal declare con lugar una acción reivindicatoria: (1) tiene que ser presentada por la persona que tenga a su favor un derecho de propiedad; (2) se debe dirigir contra la persona que tenga en su poder la cosa; (3) el demandado no puede oponer ningún derecho que justifique su pretensión de retener la cosa frente al propietario; y (4) la cosa que se reivindique debe ser debidamente identificada. *Girod Lube v. Ortiz Rolón*, 94 DPR 406, 413 (1967). Es doctrina reiterada que la acción reivindicatoria de bienes inmuebles prosperará <u>si queda probada la concurrencia de todos los elementos de la acción</u>. *Soc. Gananciales v. González Padín Co.*, 117 DPR 94 (1986); *Pérez Cruz v. Fernández Martínez*, 106 DPR 144 (1977), *Arce v. Díaz, supra*.

Se ha expresado, además, que el objeto de la reivindicación no es recobrar cualquier cantidad de terreno sino una cantidad específica y determinada. *Castrillo v. Maldonado, supra,* a la pág. 891. Así también, se ha establecido que, en una controversia de reivindicación, <u>es indudable que los planos, constituyen parte de la evidencia que puede utilizar un tribunal para restablecer a su verdadera situación los límites de diversos fundos</u>. *Íd.*

Asimismo, la parte demandante tiene que probar su caso con prueba robusta y convincente, y no puede descansar en la debilidad del título de su adversario. *Sucn. Arce v. Sierra*, 70 DPR 841, 845 (1950); *Sucn. Meléndez v. Almodóvar*, 70 DPR 527, 532 (1949). Si el demandante no logra identificar el predio que reclama de forma suficiente, la acción no puede prosperar. *Pérez Cruz v. Fernández,*

*supra,* a la pág. 374; *ELA v. Pérez Valdivieso,* 83 DPR 863, 877 (1961).

**La apreciación de la prueba y el estándar de revisión apelativa**

Es norma trillada que, en ausencia de error, prejuicio o parcialidad, los tribunales apelativos no intervendrán con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el Tribunal de Primera Instancia. *González Hernández v. González Hernández,* 181 DPR 746, 776 (2011); *Ramírez Ferrer v. Conagra Foods PR,* 175 DPR 799, 811 (2009). Esta norma de deferencia judicial descansa en que el juez ante quien declaran los testigos es quien tiene la oportunidad de verlos y observar su manera de declarar, apreciar sus gestos, titubeos, contradicciones y todo su comportamiento mientras declaran; factores que van formando gradualmente en su conciencia la convicción sobre la verdad de lo declarado. *Suárez Cáceres v. Com. Estatal Elecciones,* 176 DPR 31, 68 (2009).

De otra parte, cuando se evalúa la prueba documental, el foro apelativo se encuentra en la misma posición que el foro de primera instancia. Al tener ante sí los mismos documentos que desfilaron ante el juzgador de instancia, no hay emociones o comportamientos que el juzgador apelativo esté dejando fuera de la ecuación. "Somos conscientes, naturalmente, que en relación con la evaluación de prueba documental este tribunal está en idéntica situación que los tribunales de instancia". *Trinidad v. Chade, supra,* 292 (2001), citando a *Díaz García v. Aponte Aponte,* 125 DPR 1 (1989), y a *Ramírez, Segal & Látimer v. Rojo Rigual,* 123 DPR 161 (1989).

Similarmente, la apreciación de la prueba pericial por un foro apelativo no contiene mayores limitaciones. Tenemos amplia discreción para esta evaluación, pues se trata de un proceso en que el foro apelativo se encuentra en igual posición de apreciación de prueba. Así lo ha resuelto nuestro más alto foro al sostener:

> Consistentemente hemos resuelto que ningún tribunal está obligado a seguir indefectiblemente la opinión, juicio, conclusión o determinación de un perito o facultativo, sobre todo cuando está en conflicto con testimonios de otros peritos y que todo tribunal está en plena libertad de adoptar su criterio propio en la apreciación o evaluación de la prueba pericial y hasta descartar la misma, aunque resulte ser técnicamente correcta. *Prieto v. Maryland Casualty Co.* 98 DPR 594, 623 (1970).

En consecuencia, toda aquella prueba pericial que las partes hayan sometido ante la consideración del TPI será revisada plenamente por este tribunal apelativo.

**III.**

En esencia, la apelante señaló que el TPI cometió como errores de derecho los siguientes: (1) determinar que la parte apelada contaba con legitimación activa para instar la demanda; (2) no requerir a GVI traer como demandados a todos los colindantes que realizan actos de posesión sobre el Lote J; (3) concluir que un solar con escorrentías pluviales es susceptible de ser propiedad privada; (4) conceder la titularidad a la apelada a pesar de la Resolución de ARPe que cede dicho predio al Municipio de Gurabo; (5) decidir que la apelante no era poseedora de buena fe, aun cuando esta es titular con derecho a disfrutar de las áreas comunes; y (6) el dictamen deja enclavado el pozo séptico. Asimismo, planteó que el foro primario actuó incorrectamente en la apreciación de la prueba pericial al entender que el trabajo del perito de GVI constituye un trabajo de medición científica.

En el primer error, la apelante cuestiona la capacidad de la Sra. Lilliam Maldonado Cordero para instar la presente demanda como Presidenta de la Junta de Directores de GVI. Esto, debido a que considera que es necesario una *Resolución Corporativa* que así lo autorice o en su defecto, una autorización del Consejo de Titulares.

En cuanto a este error, entendemos necesario consignar que la Ley núm. 107-2020, conocida como el Código Municipal de Puerto

Rico, exige *que las urbanizaciones, calles o comunidades tengan un Consejo, Junta o Asociación de Residentes debidamente organizada y registrada en el Departamento de Estado como una institución sin fines de lucro* a los fines de poder solicitar y obtener el permiso para el control de acceso. Artículo 3.002 inciso (a) del Código Municipal de Puerto Rico, 21 LPRA sec. 7412.[21] Por otro lado, la Escritura Núm. 2 sobre *Constitución de Restricciones de Uso y Edificación en Urbanización Gran Vista,* otorgada el 13 de noviembre de 1986 ante el notario público Lcdo. José Ramón Quiñones Coll estableció en su Cláusula Siete (7) que "... *con el propósito de que se provea un mantenimiento, cuidado y/o supervisión adecuada de todas las áreas comunes, parques, cualesquiera otras facilidades para uso o beneficio común que se ubiquen en dicha urbanización, se creará, compuesta por los titulares de la urbanización GRAN VISTA una corporación local de fines no pecuniarios ...*"[22] Por ende, GVI es una corporación *sui generis* destinada a la organización y administración de la urbanización de acuerdo a la escritura matriz y su reglamento.

Conforme surge del Apéndice del recurso de Apelación, el 13 de agosto de 2022 se realizó una Asamblea Ordinaria en la cual, entre varios asuntos, los residentes **ratificaron por unanimidad** la continuación del presente litigio.[23] Por lo cual, siendo la Sra. Lilliam Maldonado presidenta de la Junta de Titulares posee la legitimación para instar y continuar el caso de epígrafe en representación de los titulares residentes de la Urbanización Gran Vista. Así las cosas, no era necesaria una Resolución Corporativa para continuar con el presente litigio. De hecho, la apelante no invoca que el reglamento

---

[21] En el 1987 solo se exigía que la urbanización, calle o comunidades tuviera un Consejo, Junta o Asociación de Residentes debidamente organizada y en funciones. Véase la Ley núm. 21 de 20 de mayo de 1987, sec. 2 inciso (a). Posteriormente la ley fue enmendada para ordenar la inscripción en el Departamento de Estado como una institución sin fines de lucro. Ley núm. 22-1992.

[22] Véase el Apéndice del recurso de Apelación, a la pág. 83. Subrayado nuestro.

[23] *Íd.*, a la pág. 676.

de la urbanización requería la aprobación de una Resolución Corporativa para poder instar una reclamación por y en beneficio de los titulares. Por tanto, es suficiente la aprobación unánime de los titulares que acudieron a la Asamblea Ordinaria del 13 de agosto de 2022 para concederle a la presidenta la legitimación activa.[24] Por ende, no cabe duda de que GVI es quien tiene interés legítimo y más aún, posee el derecho para reclamar la reinvindicación de un lote de terreno de su propiedad. En conclusión, el primer error no se cometió.

Al tenor de los planteamientos que fundamentan los restantes errores, los discutiremos conjuntamente.

De los hechos estipulados en el *Informe sobre Conferencia con Antelación a Juicio*; así como de la prueba desfilada en el juicio, surge claramente que GVI es la dueña registral del Lote J el que adquirió en el 1989. Como indicamos, la acción reivindicatoria se insta en contra de quien está usurpando la cosa ajena. Por tanto, aun cuando existan varios predios colindantes al Lote J, ello por sí solo no implica que los demás propietarios de dichos terrenos están en igual situación que la señora Vicente López respecto a las alegaciones en su contra. Por ello, no tenían que haberse incluido en el pleito a todos los colindantes. Nótese que los linderos ya estaban debidamente demarcados por lo que nunca se solicitó un deslinde. Incluso surge de la TPO que el Juez manifestó durante el juicio lo siguiente:[25]

> Pero, pero perdóneme, pero perdóneme, déjeme hacerle una pregunta, yo no tengo una sentencia declaratoria, **yo lo que tengo es una acción de reivindicación**. No es, una sentencia declaratoria es para que yo declare los derechos entre parte. **Tampoco tengo una acción de deslinde**. Yo lo que tengo **es una acción de reivindicación** donde alegadamente Gran Vista, cuanto presenta la demanda dice, yo soy el

---

[24] Destacamos que la apelante no asistió a dicha reunión, ni envió un proxi. Además, durante su testimonio manifestó en varias ocasiones que no reconocía a la Sra. Lilliam Maldonado Cordero como presidenta electa. Véase la TPO, Tomo II, a la pág. 140 líneas 14-17 y la pág. 198 líneas 6-10.

[25] Véase la TPO, Tomo III, a la pág. 110, líneas 5-13.

dueño del lote J, y **me están ocupando mi propiedad**, y aquí tengo los dos demandados **que están ocupando la propiedad**. […][Énfasis nuestro].

Apuntalamos, además, que el agrimensor José G. Pagán marcó los puntos, conforme surgía del plano aprobado por la extinta ARPe, así lo hizo constar. De hecho, este testificó que la metodología realizada fue una planimetría. "Es básicamente una mensura, pero sin el debido proceso de, de, de, porque no es un deslinde, nosotros estamos tomando la geometría de la calle y solo la geometría, no estamos tomando elevación, por eso es topografía. Planimetría estamos hablando de un plano, es tomar la forma de la calle y de la circunferencia, de la área, del perímetro por allí entonces usarlo como, como amarre."[26] Tampoco podemos perder de perspectiva que la mensura que preparó el Agrimensor José G. Pagán fue a los efectos de establecer los lindes o puntos específicos del Lote J para determinar la descripción del predio de terreno en controversia. Además, y al tenor de los pronunciamientos del foro apelado, existían previamente unos documentos que ya identificaban claramente el Lote J, incluyendo, como mencionamos, el plano aprobado por la ARPe y la Escritura Núm. 60 del 9 de junio de 1989 titulada *Liberación y Cesión de Terrenos*.[27] Sobre esto, el Agrimensor testificó que "[c]on lo, con la descripción legal básicamente los, los colindantes que menciona la descripción legal, sí se logró comprobar que el lote J es el que en el plano se identifica como área verde."[28] El Lote 54 es el lote de la apelante identificado por los puntos 34, 35 hacia el sur, hacia el suroeste está el 34, hacia el suroeste está el 35, hacia el este está el 33 y hacia el sur está el 30.[29] La propiedad de la apelante está separada del Lote J entre los puntos 33 y 34.[30]

---

[26] Véase la TPO, Tomo I, a la pág. 52, líneas 19-24.
[27] Véase la TPO, Tomo I, a la pág. 105, línea 12.
[28] Véase la TPO, Tomo I, a la pág. 68, líneas 22-24
[29] Véase la TPO, Tomo I, a la pág. 84, líneas 13-18.
[30] Véase la TPO, Tomo I, a la pág. 87, líneas 17-22.

Recordemos que la mensura se realizó para determinar el alcance territorial en función de los diversos actos de posesión realizados en dicho predio por la apelante. A su vez, aclaramos que en el caso no se reclama la reinvidicación de la Servidumbre Pluvial claramente demarcada que por allí discurre, la cual afecta a otros colindantes, sino el predio de terreno identificado como Lote J, el cual es conocido como una "área verde". Enfatizamos también que, conforme con la prueba, no está en controversia que entre las calles 54 y 55 de la Urbanización discurren escorrentías de aguas según fuera identificado en la vista ocular celebrada el 1 de junio de 2021. Incluso, surge claramente de la Escritura Núm. 41 sobre *Segregación y Cesión de Áreas Verdes a Favor del Municipio* otorgada el 8 de febrero de 1991, ante la Notario Lcda. Laura A. Dahdah de Surillo, que solo los Lotes M y L fueron traspasados al Municipio de Gurabo.[31] De la lectura de la descripción de ambos predios, según consta en la Escritura Núm. 41, no surge que colinden con el Lote J ni con el Solar 54 perteneciente a la apelante. Tampoco se le cedió al Municipio un área verde de la Urbanización.

De otro lado, la señora Vicente López, en su escrito,[32] pretende hacer una inferencia respecto a que, por ser el Lote J un área común que posee a su vez una servidumbre pluvial debió ser cedido al Municipio conforme con las Resoluciones de ARPe del 16 de enero de 1990 y 4 de junio de 1990, en el Caso Núm. 85-47-A-320-CPD. Ahora bien, y sin duda, dicha inferencia es una meramente especulativa sin fundamento legal alguno. Sobre cualquier titularidad del Municipio sobre el Lote J, nos remitimos al trámite procesal consignado, del cual surge palmariamente que el ayuntamiento clarificó que **el predio en controversia no le pertenece**. En este particular, es menester resaltar que durante su

---

[31] Véase el Apéndice del recurso de Apelación, a las págs. 144-149.
[32] Véase, *Apelación*, a la pág. 24.

testimonio la apelante señaló en varias ocasiones que el Lote J le pertenece al Municipio, a pesar de que la prueba demostró claramente todo lo contrario.[33] A manera ilustrativa de su obstinación citamos a continuación:[34]

> Ustedes no pueden demandar aquí, ... hacer unas alegaciones falsas y reclamar unas áreas verdes, que ya fueron cedidas desde el 1989 por la Resolución de ARP[e] al municipio de Gurabo. Si usted cree que usted tiene una titularidad mayor que la del Estado, usted se lo pide al Estado y demanda al Estado. Pero a mí no me tenía que demandar.

De otro lado, precisa advertir que en la *Sentencia Final* impugnada, el TPI determinó que "[l]a prueba presentada, admitida y creída, demostró que la verja de "cyclone fence" fue instalada y discurre a lo largo de la colindancia entre el Solar 54 y el Lote J, según establecidos en el plano aprobado por la Administración de Reglamentos y Permisos en el caso 85-47-A-320-CDP, y la misma representa el lindero correcto entre ambos predios".[35] Este hecho no fue refutado por la apelante en su escrito mediante prueba en contrario. De hecho, esta insistió en su testimonio que Gran Vista no puede colocar una verja para delimitar el Lote J.[36]

Agregamos a lo antedicho que, en la referida *Resolución* del 22 de mayo de 1989, la ARPe autorizó la segregación e inscripción de los solares y/o parcelas allí detalladas y en su consecuencia, **aprobó el Plano de Inscripción Final Enmendado** para la Urbanización Gran Vista.[37] En el que, según surge del documento, se identificó el Lote J como área verde. Así también, se especificó que el área verde es parte de las áreas comunes de la urbanización, <u>sujetas a restricción de uso y edificación</u>. Puntualizamos que el ejercicio del derecho en relación a los elementos comunes no es absoluto.[38] "El

---

[33] Véase la TPO, Tomo III, a la pág. 128, líneas 17 y 21; a la pág. 135, líneas 16-19; a la pág. 157, línea 21; a la pág. 158, líneas 1-3.
[34] *Íd.,* a la pág. 197. Líneas 5-9.
[35] Véase el Apéndice del recurso de Apelación, a la pág. 4.
[36] Véase la TPO, Tomo III, a la pág. 194, línea 15, 23-24.
[37] *Íd.*, a las págs. 267-269.
[38] Véase, *Rivera Rodríguez v. Junta Dir. I y II*, 173 DPR 475, 482 (2008).

fin para el cual se ha destinado una cosa es otro límite al uso de los elementos comunes que todos los titulares deben respetar". *Íd.*

Como ya indicamos, en los errores señalados, la señora Vicente López insiste en refutar la acción en su contra fundamentándose en el supuesto derecho de titularidad de otros, los cuales no están en el pleito. Su argumento es un acto ineficaz debido a que ella, como parte demandada, tenía que oponer un derecho que justificara retener la cosa invadida lo cual no pudo hacer. Más aún, y como bien señaló el TPI, la apelante "nunca ha reclamado ser la [titular] del terreno aquí en controversia. Su alegación siempre ha sido que el terreno le pertenece a un tercero, al Municipio de Gurabo".[39] Añadimos que, luego de leída la transcripción del testimonio de la apelante, pudimos constatar que esta, en varias ocasiones, se refiere al Lote J como un área para dedicarse a la siembra.[40] También aceptó que hace uso de dicho pedazo de terreno,[41] y parece referirse a este como de su propiedad.[42]

En resumen, conforme con nuestro estado de derecho se requiere específicamente que la apelante haya presentado un mejor título, el cual no tiene ni puede producir. Es decir, no tiene el derecho a retener el Lote J, ni hacer uso de este, ante la ausencia de un derecho a su favor. De igual manera, reiteramos que mantener la alegación de que es un terreno del Municipio es un ejercicio fútil. Incluso, aunque así lo fuera, no le corresponde a la apelante, ya que esta no tiene facultad para representar al Municipio. Tampoco es suficiente probar que el Lote J es un área verde "común" y por la cual transcurre una servidumbre de pluvial, para derrotar el

---

[39] Véase el Apéndice del recurso de Apelación, a la pág. 9.
[40] Véase la TPO, Tomo III, a la pág. 123, líneas 17-20; a la pág. 124, líneas 9-14; a la pág. 170, líneas 13-15.
[41] *Íd.*, a la pág. 130, líneas 12-15.
[42] *Íd.*, a la pág. 140, líneas 1-6; a la pág. 144, líneas 1-7; a la pág. 154, líneas 4-10.

derecho de usucapión que posee GVI. Por tanto, luego de una lectura de la transcripción oral del juicio en su fondo, reseñamos que resulta evidente la necesidad de delimitar la propiedad de la apelante del Lote J. Sin duda, esto contribuirá en gran medida a mejorar la sana convivencia e interacción en la comunidad. La apelante debe aceptar que el Lote J no es de su propiedad, ni puede hacer uso de este como si así lo fuera.

En conclusión, los errores segundo, tercero, cuarto, quinto, sexto y séptimo no se cometieron.

**IV.**

En cuanto al auto de *certiorari*, es norma asentada que los tribunales debemos ser celosos guardianes de nuestra jurisdicción. *Cordero et al. v. ARPe et al,* 187 DPR 445 (2012); *Medina v. Medina,* 161 DPR 806, 817 (2004); *Vázquez v. ARPe,* 128 DPR 513, 537 (1991); *Martínez v. Junta de Planificación,* 109 DPR 839, 842 (1980). La jurisdicción es el poder o la autoridad que posee un tribunal para considerar y decidir casos y controversias. *ASG v. Mun. San Juan,* 168 DPR 337 (2006); *Brunet Justiniano v. Gobernador,* 130 DPR 248 (1992). Por ello, las cuestiones relativas a la jurisdicción, por ser privilegiadas, deben ser resueltas con preferencia a cualesquiera otras. *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873, 882 (2007); *Morán v. Martí,* 165 DPR 356, 364 (2005); *Vega et al. v. Telefónica,* 156 DPR 584, 595 (2002). Una vez un tribunal entiende que no tiene jurisdicción solo tiene autoridad para así declararlo y, por consiguiente, desestimar el recurso. *García v. Hormigonera Mayagüezana,* 172 DPR 1, 7 (2007); *Carattini v. Collazo Syst. Analysis, Inc.,* 158 DPR 345, 355 (2003).

En la presente causa, carecemos de autoridad para examinar las contenciones de GVI expuestas en el auto de *certiorari.* Veamos.

En la *Sentencia Final,* el TPI concedió a GVI el pago de las costas del pleito y el pago de honorarios del Agrimensor José G.

Pagán, no así los honorarios de abogado por concepto de temeridad. Como se sabe, en nuestro ordenamiento, los honorarios de abogado en los que incurre una parte litigante son sufragados por esta. No obstante, según lo dispuesto en la Regla 44.1 (d) de Procedimiento Civil, 4 LPRA Ap. V, la concesión o no de los mismos a la parte que prevaleció en un litigio dependerá de la determinación que haga el magistrado que presidió el proceso respecto a si la parte perdidosa, o su abogado, actuaron o no en forma temeraria o frívola. *Corpak, Art Printing v. Ramallo Brothers*, 125 DPR 724, 736 (1990). Por ende, la concesión de los honorarios de abogado por temeridad depende de la discreción del tribunal sentenciador. *Revlon v. Las Américas Trust*, 135 DPR 363 (1994). Si bien la conclusión de temeridad no tiene que ser explícita en la sentencia, se infiere de la cuantía concedida, si alguna, ya que cuando se imponen honorarios de abogado se presume que la conclusión está implícita en la sentencia. *Insurance Co. of P.R. v. Tribunal Superior*, 100 DPR 405, 409-410 (1972). Del tribunal conceder los honorarios de abogado, se ha resuelto que en revisión no se intervendrá con la cuantía impuesta, a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. *Corpak Inc. v. Ramallo Brothers*, *supra*; *Ramírez Anglada v. Club Cala de Palma*, 123 DPR 123 (1989), citados en *Revlon v. Las Américas Trust, supra*. Del mismo modo, si no los concede, este foro intermedio debe abstenerse de usurpar la discreción del foro de primera instancia.

Es meritorio destacar que los honorarios de abogado no son parte de las costas del pleito, reglamentadas en la Regla 44.1 (a) de Procedimiento Civil, *supra*, sino un mecanismo para penalizar a la parte o abogado temerario que, por su conducta contumaz, ha obligado al adversario a incurrir en los gastos de un litigio y padecer innecesariamente molestias e inconvenientes. *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 867 (2008). Por ello, la inconformidad por

la concesión u omisión de los honorarios de abogado por concepto de temeridad no se canaliza a través del memorando de costas, sino mediante una moción de reconsideración, cuyo término jurisdiccional es de quince días, según estatuye la Regla 47 de Procedimiento Civil, *supra.*

En este caso, luego de notificada la *Sentencia Final* el 31 de agosto de 2023, el 8 de septiembre de 2023 GVI reclamó al TPI que concediera a su favor los honorarios de abogado por la imputada temeridad de la señora Vicente López. Toda vez que la solicitud fue presentada dentro del término jurisdiccional de quince días, la misma fue oportuna. Sin embargo, el TPI no acogió su planteamiento ni varió su dictamen, por lo que declaró no ha lugar a la petición. Este pronunciamiento se notificó el 14 de septiembre de 2023. A tales efectos, **GVI tenía un plazo jurisdiccional de treinta días para acudir en apelación ante este tribunal intermedio. Dicho término expiró el 16 de octubre de 2023**.[43] No obstante, como reseñamos, GVI instó una improcedente segunda reconsideración la cual, también de manera inoficiosa, el TPI resolvió. Al acudir tardíamente el 22 de noviembre de 2023, es forzoso concluir que estamos privados de jurisdicción para atender el señalamiento de error A, relacionado con la petición de honorarios de abogado.

Con relación a la partida "n" incluida en el *Memorando de Costas* y señalada como el error B en el auto discrecional, esta corresponde a la concesión de costas interlocutorias al amparo de la Regla 44.2 de Procedimiento Civil, *supra.* Dicha norma procesal provee para que el tribunal imponga costas interlocutorias, "en todo caso y en cualquier etapa, a una parte o a su representante legal por

---

[43] El 14 de octubre de 2023 fue sábado, por lo que el término jurisdiccional de treinta días para apelar se extendió hasta el próximo día laborable, esto es, el lunes, 16 de octubre de 2023.

conducta constitutiva de demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia". *Íd.* En torno a esto, el tratadista Rafael Hernández Colón ha opinado que los gastos a resarcirse son aquellos que cualifican bajo la Regla 44.1 (a). R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis de Puerto Rico, 2017, sec. 4206, pág. 431. Igualmente, el tratadista José Cuevas Segarra ha expresado que la "sabia" regla procesal constituye un instrumento adicional para agilizar los procedimientos judiciales. Por consiguiente, el tribunal tiene facultad de imponer el pago de las costas interlocutorias "cuando la conducta de las partes vaya en perjuicio de la eficiente administración de la justicia". J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan Publicaciones JTS, 2011, T. IV, pág. 1325. Añade Cuevas Segarra:

> … De más está decir que este tipo de costas es *sui generis*, pues, primero, **no depende de si la parte que las reclama vencerá finalmente en el pleito**. Segundo, **no contienen un término fijo para someter el memorándum** y aunque se dijera, por analogía, que es de diez (10) días, no se sabe a partir de qué momento se computa el término. Tercero, no se dice si lo que se presenta es una moción solicitándolas y, **una vez declarada con lugar la solicitud, la parte somete la relación de gastos**, o si, por el contrario, lo que se somete es el usual memorándum con la súplica de que se apruebe. Cuarto, no se especifica si la reclamación se hace bajo juramento o bajo certificación del abogado. En la práctica, sin embargo, he notado que **en múltiples ocasiones no se exige formalidad específica alguna y basta una moción informando los gastos acompañada de la prueba documental que los corrobora**. [Énfasis nuestro]. *Íd.*, a las págs. 1325-1326.

En el caso de epígrafe, el 30 de junio de 2022 y en cumplimiento de *Orden*, GVI informó al TPI los gastos incurridos por la comparecencia de los testigos y el perito a la vista celebrada el 22 de junio anterior.[44] Acompañó su escrito con tres facturas que totalizaron la suma de $861. En respuesta, el TPI concedió la

---

[44] Apéndice del Recurso de *Certiorari*, a las págs. 155, 157, con anejos a las págs. 156, 158-159. Refiérase al Apéndice del recurso de Apelación, a la pág. 543.

cuantía y condenó a la señora Vicente López al pago de esta el 13 de julio de 2022. Luego, en otro escrito posterior, GVI indicó que la recurrida no había satisfecho la obligación.[45] El 12 de octubre de 2022, el TPI respondió que **el asunto era uno de ejecución**.[46]

Es imperativo resaltar que GVI no recurre de ninguna de las costas del litigio concedidas ni negadas por el TPI, según estatuidas en la Regla 44.1 (a) de Procedimiento Civil, *supra*. Su contención se circunscribe a la falta de pago de las costas interlocutorias por $861 que la señora Vicente López está compelida a satisfacer desde 2022, al palio de la Regla 44.2 de Procedimiento Civil, *supra*. Sobre dicho asunto, ya la peticionaria cuenta con un mandato judicial a su favor final, firme e inapelable.

"En nuestra jurisdicción, los derechos y las obligaciones adjudicados mediante un dictamen judicial, que adviene final y firme, constituyen ley del caso". *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 8 (2016) y los casos allí citados. Por tanto, esos derechos y obligaciones gozan de finalidad y firmeza para que las partes en un pleito puedan proceder sobre unas directrices confiables y certeras y, de ordinario, no pueden ser objeto de revisión. *Íd.*, a la pág. 9.

En este caso, no surge de los autos que GVI haya utilizado alguno de los mecanismos provistos en el ordenamiento procesal civil para el recobro de las costas interlocutorias concedidas a su favor en 2022, el cual es independiente de las costas finales del pleito en el que prevaleció. Por consiguiente, este foro no tiene autoridad para proveer remedio alguno sobre la cuestión planteada en el señalamiento de error B.

**V.**

Por los fundamentos antes expuestos, respecto al caso KLAN202300881, confirmamos la *Sentencia Final* apelada. Relativo

---

[45] Apéndice del Recurso de *Certiorari*, a la pág. 163.
[46] *Íd.*, a la pág. 165.

al auto de *certiorari* KLCE202301310, desestimamos el recurso por falta de jurisdicción.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones
